PATRICK J. HARRIGAN ET AL., RESPONDENTS, *v.*
MICHAEL LYNCH, APPELLANT.

[Submitted March 25, 1898.   Decided April 4, 1898.]

*New Trial—Record—Mining Claims—Tenants in Common—Injunction—Evidence.*

1. NEW TRIAL—*Record.*—Waiver of objection to want of notice of intention to move for a new trial will be inferred from the action of plaintiff in offering amendments to the proposed statement or bill of exceptions to be used on hearing of the motion, without preserving an objection to the same because of the lack of such notice.

2. MINING CLAIM—*Tenants in Common—Evidence.*—Evidence which shows that the defendant was working a mining claim owned by him and plaintiffs as tenants in common, without their consent, that he carried on the work in his own manner, extracted and took away the ores, made his own arrangements for milling the ores, and applied the proceeds to the payment of obligations incurred by him in operating the mine, and that he intended to continue the work, sustain a finding that he was exercising exclusive ownership over the portion of the mine which he was working, and that he had taken away common property, under Section 592 of the Code of Civil Procedure.

3. SAME—*Injunction.*—Under Section 592 of the Code of Civil Procedure, one tenant in common of a mining claim is entitled to an injunction against his co-owners who are doing development upon the claim without his consent.

4. SAME—*Evidence.*—Under Section 593 of the Code of Civil Procedure, which provides that "if any person shall assume and exercise exclusive ownership over, or take away, destroy, lessen in value, or otherwise injure or abuse any property held in joint tenancy, or tenancy in common, the party aggrieved shall have his action for the injury in the same manner as he would have it if such joint tenancy or tenancy in common did not exist," the fact that the work being done by the defendant tends to develop the claim, does not constitute a defense to an action brought to enjoin him from working the same, when he is assuming exclusive ownership over, or is taking away any of the common property.

*Appeal from District Court, Lewis and Clarke County. Henry N. Blake, Judge.*

ACTION by Patrick J. Harrigan and another against Michael Lynch. From a judgment in favor of plaintiffs, and from an order denying a new trial, defendant appeals. Affirmed.

*Toole & Wallace,* for Appellant.

As the common law prevails here (except as modified by statute—Section 5152 of the Political Code) the following common law principles are important. (a) Co-tenants hold by unity of possession. Therefore when the property is vacant any co-tenant may enter and occupy the whole, and if the property be not capable of a double occupancy, the other tenants await their turn and occupy when a vacancy occurs. (Freeman on Co-tenancy, §§ 250, 258; *Roper* v. *Lodge,* 33 Am. Rep. 61; *Owen* v. *Morton,* 24 Cal. 376, foot; *Waring* v. *Crow,* 11 Cal. 371, foot; *Tevis* v. *Hicks,* 38 Cal. 239, foot; *Miller* v. *Myles,* 46 Cal. 535; *Coleman* v. *Clements,* 23 Cal. 245, 247, foot; *Aguirre* v. *Alexander,* 58 Cal. 28.) This right of occupancy involves the right of use, i. e. to "make such profits as he can by the usual means of getting a benefit from the land;" and gives the power to do what he wills with the property so long as he does not misuse or destroy it or oust his co-tenants, as ouster is technically defined. (Freeman on Co-tenancy, §§ 250, 258; *Sargent* v. *Parsons,* 12 Mass. 152, middle; *Crane* v. *Waggoner,* 27 Ind. 53, top; *Regan* v. *McCoy,* 29 Mo. 367, middle and cases.) This use when applied to a quartz mine means the workmanlike mining thereof, and converting the ores extracted into money, which is neither

misuse, destruction or waste. (*Neil* v. *Neil*, 19 Penn. St. 328, foot, 329, top; *Irvin* v. *Covode*, 24 Pa. St. 166, 167; *McCord* v. *Oakland*, *Q. M. Co.*, 64 Cal. 140, foot; 141, foot; 142, top; *Anaconda Co.* v. *Butte & Boston Co.*, 17 Mont. 324.) As to the force of this statute, it is simply remedial, giving new remedies for certain enumerated acts, which, even at common law, were wrongful in a co-tenant. It was not intended to take a right from one co-tenant and bestow it on another. The acts referred to by the statute, Section 592, Code of Civil Procedure, are: 1. Assertion and assumption of exclusive ownership. 2. Taking away, destroying, lessening in value or otherwise injuring or abusing. These acts were wrongful at common law. The assumption of exclusive ownership is nothing more nor less than ouster at the common law. (*Feliz* v. *Feliz*, 105 Cal. 4; *Gordon* v. *Pearson*, 1 Mass. 323.) Ouster is spoken of as "the assumption of ownership by one co-tenant," in *Newell* v. *Woodruff*, 30 Conn. 492. For ouster the common law only provided two remedies. 1. Ejectment. 2. Forcible entry. (*Rogan* v. *McCoy*, 29 Mo. 367, foot.) And gave no remedy at all for waste. Though in equity there was a remedy by injunction. (*McCord* v. *Oakland Q. M. Co.*, 29 Pac. 864.) Ouster then or the exercise or assumption of exclusive ownership was forbidden as well by the common law as by the statute; while mining was and is a rightful use and enjoyment, and cannot constitute, when properly done, any of the acts prohibited by the statute. To constitute this ouster or exercise and assumption of exclusive ownership there must not only be exclusive occupancy and use, i. e. mining, but also, either a denial of title, or refusal to let into possession on demand, or other similar acts unequivocally evidencing the intent to exclude the other and hold exclusively for himself. (*McLaughlin* v. *McLaughlin*, 30 Atl. 607, 608; *Owen* v. *Morton*, 24 Cal. 373, 376; *Carpentier* v. *Gardiner*, 29 Cal. 160; *Spect* v. *Gregg*, 51 Cal. 198, 545; *Winterburn* v. *Chambers*, 91 Cal. 180; *Feliz* v. *Feliz*, 105 Cal. 4; Freeman on Co-tenancy, § 248, page 304; *Coleman* v. *Clements*, 23 Cal. 247; *Carpentier* v. *Webster*, 27

Cal. 524; *Miller* v. *Myles*, 46 Cal. 538; *Greer* v. *Tripp*, 56 Cal 209, 212; *Phelan* v. *Smith*, 100 Cal. 167; *Newell* v. *Woodruff*, 30 Conn. 492, 497.) The purchase or attempt to purchase the interests of one co-tenant raises a presumption of an intention to recognize the interests of all other co-tenants. (Also *Brook* v. *Eggleston*, 13 So. Rep. 850.) While the necessity of a demand to be let into possession, before there can be a claim of ouster where the entry was into vacant property, is set forth in *Avon Manufacturing Co.* v. *Andrews*, 30 Conn. 489; *Crane* v. *Waggoner*, 27 Ind. 52; *Miller* v. *Myles*, 46 Cal. 539.)

*T. J. Walsh*, for Respondent.

An attack is made upon some of the findings on the ground that the evidence is insufficient to sustain them. But there is no opportunity to review the evidence, as there is no notice of intention to move for a new trial, in the record. (*Grinnell* v. *Davis*, 19 Mont., 50 Pac. 556.) There is no great controversy about the facts. The appellant began operating the mine without asking the permission or getting the consent of his co-tenants. He did not invite them to participate with him in the work. He did not notify them that he was going to operate or was operating the property. He conducted the work in his own manner, contracted the necessary obligations in his own name, made his own arrangements about milling the ore, appropriated the amalgam and applied the proceeds of it (to the obligations he contracted) as he saw fit. He never rendered any account to respondents, and refused to render them an account when they asked for it. It would seem as though, in view of the rulings of this court in *Anaconda Mining Co.* v. *Butte & Boston Mining Co.*, 17 Mont. 519; *Red Mountain Mining Co.* v. *Esler*, 18 Mont. 174, *Connole* v. *B. & M. Co.* (not yet reported), there was little scope for argument on this state of facts. The right of a co-tenant to mine the common property is one regarding which a strange diversity of views is held. In England it is held that the co-tenant may extract the valuable deposits, but

he must account to his co-tenants for any profits made in the enterprise. (*Job* v. *Patton*, L. R. 20 Eq. 84.) It has been so held also in Virginia, a statute influencing the holding to some extent. (*Graham* v. *Pierce*, 19 Gratt. 28.) In California it is held that the working co-tenant can not be restrained from operating, and is under no obligation to account. (*McCord* v. *Oakland Q. M. Co.*, 64 Cal. 134-145.) In Illinois it is held that a co-tenant can not mine the property without the consent of his co-tenants. (*Murray* v. *Haverly*, 70 Ill. 318.) These conflicting opinions are, however, of comparatively little consequence to us, since this court has declared, in the decisions above referred to, the law of this state to be that one co-tenant may have injunction against another under the circumstances of this case, by reason of the plain provisions of our statute, Section 592 of the Code of Civil Procedure.

PIGOTT, J.—By this appeal the court has again before it for interpretation the provisions of Section 592 of the Code of Civil Procedure. The parties are tenants in common of the M. L. lode claim, situated in Lewis and Clarke county. Plaintiffs own an undivided one-fourth, and the defendant an undivided one-third interest in the claim.

The complaint alleges that the defendant, without the consent of the plaintiffs, had extracted gold ore from the claim, which he appropriated to his own use, and was continuing and threatening to continue to extract such ore and dispose of the same, and to convert it to his own use, all to the damage of the property; that defendant assumed and exercised exclusive ownership over the common property; that defendant was conducting operations in a wasteful manner; and that he refused to render an account to plaintiffs. The relief demanded is an injunction restraining defendant from committing the acts complained of, and an accounting.

The answer admits the extraction of the ore, and defendant's intention to continue such extraction, but denies that his operation of the claim was without plaintiffs' consent, or that

the claim was injured by the acts of the defendant, and alleges, in effect, that all the proceeds of the ores taken out by him were used in defraying the expenses of developing the claim and hauling and milling the ore, and sets up that his operations were conducted in a skillful manner; that the mine has been developed and benefited by the operations mentioned in the complaint.

Upon the trial it appeared, among other things, that defendant had taken out and reduced 828 tons of ore, of the probable gross value of $3.25 a ton, and that the cost of hoisting and milling was approximately $4.01 per ton; that there was no profit, in money, derived from his operations; that defendant was working the claim without the consent of plaintiffs, had failed to render an account when they asked for it, and that he was proceeding with the work in all respects as if he were sole owner. Defendant offered to show that the work performed by him enhanced the value of the property, and that he was working in a shaft which had been sunk by him in 1885 with the consent of the then owners; but, on objection, the evidence offered was excluded as immaterial.

The court found that defendant, since April, 1896, had taken away from the claim 828 tons of ore, of the value of $3 per ton, and had disposed of the same, and converted the proceeds to his own use, and had thereby lessened in value and injured the common property, and threatened to continue to take away and dispose of the ore, but that he had applied all the proceeds of the ores milled or disposed of by him in payment of legitimate expenses incurred in the necessary extraction of the ore; that in his operations he had developed the claim in a miner-like manner; that plaintiffs did not consent to the acts of defendant, but might, with the exercise of slight diligence, have ascertained that he was sinking a shaft upon the property; that defendant performed the labor in good faith at his own expense, for the purpose of developing the claim; and that the defendant was exercising exclusive ownership over the part of the claim upon which he performed work. From these findings the court drew the conclusion of

law that, within the meaning of Section 592 of the Code of
Civil Procedure, defendant had taken away ore from the
claim, and thereby injured it, and lessened its value, without
the consent of the plaintiffs.  Judgment was entered enjoin-
ing defendant from extracting ore from the claim, or reducing
or otherwise disposing of any ore extracted from it.  From
this judgment, and from an order refusing a new trial, de-
fendant appeals.

1.    Plaintiffs contend that the question whether the evi-
dence is sufficient to sustain the findings is not before the
court, for the reason that the notice of intention to move for
a new trial, while in the transcript, is not included in the
statement on such motion or in a bill of exception.  This court
has many times held such notice of intention to be an indis-
pensable part of the record on appeal from the order granting
or denying a new trial ( *Gum* v. *Murray*, 6 Mont. 10; 9 Pac.
447; *Morse* v. *Boyde*, 11 Mont. 248, 28 Pac. 260; *Grinnell*
v. *Davis*, 20 Mont. 222, 50 Pac. 556); but in none of the
cases did the record disclose facts from which a waiver of the
objection to a want of notice would be inferred.  In the case
at bar, however, it is clearly shown by the record itself that
plaintiffs offered amendments to the proposed statement served
by defendant, without then or at any time reserving objection
to the want of notice of intention to move for a new trial; and
this, we think, amounted to a waiver of notice.  ( *Williams* v.
*Gregory*, 9 Cal. 76, cited with approval in *Payne* v. *Davis*,
2 Mont. 384; *Frost* v. *Meetz*, 52 Cal. 670; *Godchaux* v. *Mul-
ford*, 26 Cal. 316; *Brundage* v. *Adams*, 41 Cal. 619; *Savings
and Loan Society* v. *Moore*, 68 Cal. 158, 8 Pac. 824; *Christy*
v. *Spring Valley Water Co.* 68 Cal. 73, 8 Pac. 849; *Hobbs*
v. *Duff*, 43 Cal. 485.)    The view stated renders unnecessary
the consideration of the question whether a notice of intention
to move for a new trial which is included in the transcript,
but is not embraced in the statement or in a bill of exceptions,
is part of the record on appeal; and the question is reserved.

2.    Section 592 of the Code of Civil Procedure provides :
"If any person shall assume and exercise exclusive ownership

over, or take away, destroy, lessen in value, or otherwise injure or abuse any property held in joint tenancy or tenancy in common, the party aggrieved shall have his action for the injury in the same manner as he would have if such joint tenancy or tenancy in common did not exist.''

The findings of the court are responsive to the issues, and are sufficient to bring the case within the statute quoted, and to support the decree awarding the injunction. Failure to find specially whether the defendant had refused to render an account is of no moment, as the decree does not give relief beyond the injunction; and the contention of plaintiffs that there is an implied finding in their favor on the accounting issue will not be decided, but that question is also reserved.

Defendant argues, however, that the evidence does not justify the finding that he was exercising exclusive ownership over that part of the claim upon which he was working, or the finding that, in extracting and removing the ore, he had taken away any of the common property, within the meaning of section 592. He complains also of the action of the court in excluding the evidence hereinbefore stated, offered by him.

We think the evidence is ample to justify the material findings. It was shown that the defendant operated the mine without the consent of plaintiffs; that he carried on the work in his own manner, contracting obligations arising therefrom in his own name; extracted and took away the ores; made his own contracts and arrangements in respect of milling the ores; appropriated the amalgam, and applied the proceeds to the payment of obligations incurred by reason of his operations; and that he intended to continue the work. That he did not render an account to the plaintiffs may, perhaps, be given some weight as tending to prove an assumption and exercise of exclusive ownership by him.

By the provisions of Section 592, the question whether plaintiffs can maintain this action is reduced to the simple inquiry: Could it have been maintained if the plaintiffs had owned the whole of the claim? If it could, then the statute declares it may be maintained now in the same manner as

then. The form of action may be the same in the one case as in the other. If plaintiffs were the owners of the whole claim, they could, upon the facts proved and admitted to exist, maintain this action as against a stranger.

These principles were well expressed by the Supreme Court of Illinois in interpreting a statute identical with Section 592, with the exception that the remedy was restricted, as it was in Montana prior to July 1, 1895, to an action of trover or trespass. (*Boyle* v. *Levings*, 28 Ill. 316.) This court, in *Anaconda Copper Mining Co.* v. *Butte & Boston Mining Co.*, 17 Mont. 519, 43 Pac. 924, has enunciated an interpretation of Section 592, the principle of which controls this case.

At page 527, 17 Mont., and page 927, 43 Pac., the court said : ''How does he have this action, and what action may he have ? He has it 'in the same manner as he would have if such joint tenancy or tenancy in common did not exist.' Now, exclude from the mind the idea and the fact of joint tenancy or tenancy in common. The statute puts them out of the way, and says, 'The party shall have his action,' as if they did not exist. Therefore we have this situation : The defendant in this case, with no joint relations to the plaintiff, goes upon the plaintiff's property, and assumes and exercises exclusive ownership over it, works it in its own manner, subject to its own approval only, takes the ore from the same by its own methods, and plaintiff sees its own property being used and consumed against its will and consent. Having, by reason of the statute, gotten the question of joint tenancy and tenancy in common out of the way, we are of opinion that it cannot be questioned that the injunction would lie; and we are of opinion that the statute intended that it should, and that for a plaintiff in the position of this one, having any appropriate remedy to enforce its rights, injunction is an appropriate remedy.'' The court further said : ''We do not hold that taking out the ore would be waste, but we do hold that at least it would be a use which consumes, and the only adequate remedy against the dangers to plaintiff of such a use is injunction.''

The reasoning of this case was approved in *Red Mountain Consolidated Mining Co.* v. *Esler*, 18 Mont. 174, 44 Pac. 523, and *Connole* v. *Boston and Montana Mining Co.*, 20 Mont. 523, 52 Pac. 263. In the latter case this court said that the provisions of Section 592, as interpreted by the court in the *Anaconda Copper Mining Co.* case, *supra*, conferred upon a tenant in common the right to an injunction against a co-tenant who assumes and exercises exclusive ownership over or takes away, destroys, lessens in value, or otherwise injures the property, whenever he would have such right as against a stranger to the subject of common ownership.

But defendant insists that he was entitled to show that his work enhanced the value of the claim, and that he was working in a shaft which he had sunk in 1885, with the consent of the persons who then owned the claim. The latter offer was of irrelevant testimony; and, however important might be evidence establishing that his operations gave the claim added value were an accounting decreed, we are unable to perceive upon what theory such proof would be material in considering whether defendant should be enjoined from taking away the common property, and from assuming and exercising exclusive ownership over part of such property. The evidence tendered would certainly be inadmissible if the defendant had no interest in the claim, and plaintiffs were the owners of the entire property. Since plaintiffs would have the remedy by injunction as against defendant were he not a co-tenant, they have it, by virtue of Section 592, despite such relationship.

Under the provisions of Section 592, and upon the principles announced in former decisions of this court, we are constrained to hold that owners of interests in a lode mining claim are entitled to an injunction against a co-owner prosecuting development work without their consent, restraining him from extracting, milling or disposing of the ore of the common property. It may be argued that a different doctrine, resting upon other principles, is to be applied to cases where the annual labor required, commonly spoken of as "representation work," is being performed by one co-tenant without the con-

sent of the others; but that question is not presented or suggested. Such distinction may exist. We express no opinion upon the subject. If inconvenience or hardship in particular instances be occasioned by enforcing the provisions of Section 592, the legislature, which alone can change the written law, must be looked to for relief.

Finding no error in the record, the judgment and order appealed from are affirmed.

*Affirmed.*

PEMBERTON, C. J., and HUNT, J., concur.