# BUTTE & BOSTON CONSOLIDATED MINING CO., APPELLANT, *v.* MONTANA ORE PURCHASING .CO. ET AL., RESPONDENTS.

[No. 1,459.]

[Submitted January 18, 1900.   Decided April 30, 1900.]

| 24 | 125 |
| s25 | 66 |
| d25 | 137 |

| 24 | 125 |
| 26 | 202 |

| 24 | 125 |
| 32 | 512 |

*Mines and Mining— Corporations—Injunction—Pleading— Verification—Statutory Construction— Co-Tenants— Operation of Mine—Tender.*

1. A restraining order can not be granted on a complaint by a corporation verified only on information and belief; the affidavit of verification must be made positively.
2. A repeal signifies an abrogation of one statute by another. The Act of Feb. 28, 1899 (Session Laws of 1899, p. 134), did not repeal, expressly or by implication, Section 592 of the Code of Civil Procedure, but restricted the operation of the general language of said section by giving to the subject matter thereof a qualified operation, merely, as to the cases included in the provisos of the Act of Feb. 28, 1899.
3. To be excepted from the liabilities for injury under Section 592, Code of Civil Procedure, a co-tenant, entering upon mining property and enjoying the rights given by the provision of the Act of Feb. 28, 1899, must comply strictly with the obligations attached to the privilege of such entry; unless a working co-tenant brings himself squarely within the provisos of the Act of Feb. 28, 1899, the law preserves to his non-working co-tenant exactly the same actions against such working co-tenant as he had before said act was in force.
4. Where one co-tenant occupies mining property in compliance with the provisions of the Act of Feb. 28, 1899, the statute does not always give to another co-tenant an equal right to mine elsewhere on the same claim.
5. A co-tenant not joining in the operation of a mine, and suing for damages for the removal of ore therefrom through another mine, owned by his tenant in common, to which plaintiff had no right of access, was entitled to an injunction *pendente lite* to restrain such removal, though defendant offered to account for ore extracted therefrom.
6. Where defendant, a co-tenant, wrongfully worked a mine through a shaft from another mine, in which plaintiff had no interest and to which he had no right of access, plaintiff was entitled to an injunction *pendente lite*, restraining defendant from continuing to work such mine, though he failed to tender his proportionate share of the cost of mining the ore extracted therefrom, since such tender was excused by plaintiff's inability to ascertain what ores it was entitled to in order to estimate the amount of such tender.

*Appeal from District Court, Silver Bow County; John Lindsay, Judge.*

ACTION by the Butte & Boston Consolidated Mining Company against the Montana Ore Purchasing Company and others, to recover damages for wrongful removal of ore from

a mine, and to restrain its further operation.   From an order dissolving a temporary restraining order and denying an injunction *pendente lite*, plaintiff appeals.   Order dissolving the restraining order affirmed, and order denying the injunction *pendente lite* reversed.

## STATEMENT OF THE CASE.

Plaintiff brought this action for damages and injunction. A temporary restraining order was issued on the complaint alone.   Defendants moved to discharge the temporary restraining order.   That motion and an application for an injunction pending the litigation were heard together.   The lower court discharged the temporary restraining order, and denied the injunction *pendente lite*.   Plaintiff appeals from each order.   On the hearing it was admitted that the legal title to the Snohomish mining claim is one-half in the plaintiff, the Butte & Boston Consolidated Mining Company, and one-half in the defendants, A. P. and F. A. Heinze, and that the legal title to the Tramway mining claim is two-thirds in the said plaintiff, and one-third in the said defendants, A. P. and F. A. Heinze.   F. A. Heinze is the administrator of the estate of James Larkin, deceased, of which said estate Clara Larkin is heir.   The administrator and heir are made defendants; it appearing that there is pending another action, wherein the said heir claims that the estate of Larkin owns the one-half of the Snohomish and two-thirds of the Tramway claims.   But, so far as the legal title is concerned, plaintiff and A. P. and F. A. Heinze are conceded to be joint tenants in the Snohomish and Tramway claims.   The Snohomish and Tramway claims are near to the Rarus mining claim, which is owned by the defendant, the Montana Ore Purchasing Company, and through the workings of the Rarus there is underground access to the Snohomish and Tramway mines.   Certain of the defendants (the Heinzes) entered upon the Snohomish and Tramway claims through the underground workings from the Rarus, extracted ore, and hoisted the same through the Rarus shaft.   Said defendants had the ores so

extracted treated and reduced.     None of this ore was left on
the dump of the Snohomish or Tramway claims.     Plaintiff
made no tender to defendants before this action was instituted
of its proportionate share of the cost of mining the ore so ex-
tracted, nor did it ever demand an accounting.     Plaintiff had
no rights upon the Rarus ground, and one of its engineers
was denied free access to certain workings of the Snohomish,
to which he could only get access conveniently, if at all,
through the Rarus shaft.     Defendants F. A. and A. P. Heinze
had carried on mining through underground workings in the
Snohomish and Tramway claims for some time.     Of all this
plaintiff had knowledge, yet never made complaint until the
commencement of this action.     An account of ores extracted
was kept by Messrs. Heinze, who were willing to account to
their co-tenant.

*Messrs. Forbis & Evans, Mr. Ransom Cooper,* and *Mr.
William H. De Witt,* for Appellant.

*Messrs. McHatton & Cotter, Messrs. Clayberg, Corbett &
Lee, Mr. Robert B. Smith, Mr. Charles R. Leonard, Messrs.
McConnell & McConnell,* and *Messrs. Toole, Bach & Toole,*
for Respondents.

PER CURIAM.—1.     Counsel for the defendants would
have us affirm the order dissolving the temporary restraining
order because the complaint made by the corporation was not
verified as required by Section 872 of the Code of Civil Pro-
cedure.     That section provides that an injunction order shall
not be granted on the complaint alone unless (1) it be duly
verified; and (2) the material allegations of the complaint,
setting forth the grounds therefor, be made positively, and
not upon information and belief.     The material allegations of
this complaint are made positively, and not upon information
and belief, but the verification is in the form prescribed by
Section 731 of the Code of Civil Procedure, which provides,
that when a corporation is a party, the verification may be
made by an officer thereof, and must state what officer he is,

and that the matters stated therein are true, to the best knowledge, information, and belief of such officer. If there is no officer of the corporation within the county, the verification may be made by its attorney. Defendants' reasoning is that Section 872 is a special statute appertaining to a complaint for an injunction, and that in order to carry out the meaning of the statute, no injunction order shall be granted on the complaint alone, unless the verification be duly made positively, and not upon information and belief. We must uphold defendants' position. The purpose of the prohibitive part of the statute (Section 872) is to prevent the granting of a restraining order upon a complaint alone, unless the plaintiff will positively set forth his grounds for relief. Good faith and truthfulness on the part of the complainant are more apt to be had by requiring positive statements, than could they be by permitting him to procure an order based upon a complaint made only on information and belief. That part of Section 872 forbidding the granting of an injunction order on the complaint alone, unless "it be duly verified," must be read in connection with the latter portion, requiring the material allegations of the complaint, setting forth the grounds for injunction, to be made positively, and not upon information and belief. So reading the statute, it not only requires the material allegations of the complaint to be made positively, but that the whole complaint shall be verified by affidavit as positively as its material averments must have been made. Therefore there is not a duly-verified complaint, under Section 872, unless the verification is upon oath, positively made, to the truth of the complaint asking for the injunction order.

It would be doing violence to the object of Section 872 to hold that a corporation can secure an injunction order on a complaint alone, not verified as true, but that an individual cannot; yet such would be the consequences of a rule to the effect that the words "duly verified" mean simply a verification under Section 731, or the general statutes relating to verification. Again, if the due verification contemplated by

Section 872, where an injunction order is asked on a complaint alone, is only what must be had to pleadings generally, an individual desirous of securing an injunction order can go out of the county where the complaint is filed, and by doing so secure an injunction order on a complaint alone, verified by his agent or attorney on his best knowledge, information, and belief, whereas, if he should remain in the county where the application is made, he would have to verify by affidavit to the effect that his pleading is true to his knowledge. The spirit of Section 872 is manifestly against such practices, and we believe that to avoid constructions which will practically nullify the prohibition against granting an injunction order on a complaint alone, unless the material allegations setting forth the grounds therefor be made positively, it is proper to regard the verification as duly made only when the affidavit of verification is made positively.

Where a corporation seeks an injunction order on a complaint alone, the complaint will usually be verified by some officer, agent, or attorney who knows the facts. Some one, however, must make positive affidavit to their truth, under Section 872, which, in our opinion, specially controls, without distinction between individuals and corporations.

The court therefore properly dissolved the restraining order that had been issued on the complaint alone; but when the hearing was had in support of the application for an injunction *pendente lite*, and before the order denying the same was made, evidence on both sides was introduced and considered. The question is therefore presented whether, under the pleadings and evidence, the court was correct in denying the plaintiff's application for an injunction *pendente lite*.

2.   May the defendants mine the Snohomish and Tramway claims *pendente lite*, under the provisions of the act to amend Section 592 of the Code of Civil Procedure, relating to property held in joint tenancy and tenancy in common, approved February 28, 1899 (Session Laws 1899, p. 134)?

Before the amendment the defendants were barred. Being co-tenants with the Messrs. Heinze, the plaintiff corporation

was aggrieved by the mining done by the defendants, which involved the assumption and exercise of exclusive ownership over the property.   Being so aggrieved, it had a right of action for the injury done, which right of action was as full and complete, under the facts presented, as if the co-tenants were strangers in their property relations. (*Anaconda Copper Min. Co.* v. *Butte & Boston Min. Co.*, 17 Mont. 519, 43 Pac. 924.)

The extinction of the strict rules controlling the relationship between co-tenants, in so far as the common law or earlier statutes restricted one co-tenant in the enforcement of a remedy if aggrieved in certain respects, gave the plaintiff a remedy through any appropriate action, including the remedy by injunction.   In their learned supplemental brief, counsel for respondents contend that the rule of the *Anaconda Case, supra*, went too far, because, they say, its logical results will permit one co-tenant to prevent his co-owners from using the common property in any manner, and thus to destroy rights which have always existed at the common law, but which the statute did not take away.   It is proper, though, to accept the statements of the court in that case, and to understand them as applied only to the particular facts and kind of property then before the court.   When this is done, the general argument of the opinion does not admit of the unqualified deductions that counsel have made.   The rule of the *Anaconda Case* is well stated in the headnote as follows:   "Where one of two tenants in common of a mine owns an adjoining claim, from which, by means of a shaft and underground workings, he extracts the ore from the vein in which they are co-tenants, appropriating it to his own use, this is an assumption and exercise of exclusive ownership over the property, which the tenant aggrieved thereby may restrain by injunction, under Section 592 of the Code of Civil Procedure, providing that, if any person shall assume or exercise exclusive ownership over any property held in tenancy in common, the party aggrieved may have his action for the injury in the same manner as if such tenancy in common did not exist."

The reasoning of Justice De Witt was on lines within which actions concerning co-tenancies of the kind then before the court must be controlled under the statute: "If any person shall assume and exercise exclusive ownership over   \*   \*   \* any property held in tenancy in common, the party aggrieved shall have his action for the injury in the same manner as he would have if such tenancy in common did not exist." Now, when any of the conditions which are enumerated do exist, his "action" is an ordinary proceeding in a court of justice, by which he may prosecute an aggrieving party for the enforcement or protection of any right, or the redress or prevention of a wrong. It follows that, if he has the action, as the aggrieved party he has a right to the action, not provided only he may not have had it at the common law, but he shall have it in the same manner as he would have if tenancy in common did not exist; that is, if any one co-tenant shall assume and exercise exclusive ownership over the property of his co-tenants, for the purposes of the enforcement or protection of any right or the prevention of any wrong, the relationship of co-tenancy does not limit the nonjoining co-tenant to any one remedy or to the pursuit of any particular proceeding formerly limiting actions by one co-tenant against another, but affords him any action that a stranger might have. Indeed, when aggrieved, he becomes a stranger towards his co-tenant in casting about for relief.

Counsel argue that injunction will not lie herein, because the law does not say the same remedy shall be given; but to the end that an action may be had, and for the very purpose of affording relief, there is an obliteration of the joint relationship when one co-tenant assumes and exercises exclusive ownership, or takes away, destroys, lessens in value, or otherwise injures or abuses any property held in tenancy in common. With the right of action given goes the right to the instrument, or the means by which to maintain the right; that is, the remedy, for an action is but one of the two remedies laid down by the Code to be administered by a court of justice. (Sections 3469, 3470, of the Code of Civil Procedure.)

In this argument, which is but a restatement of the rule of the *Anaconda Case,* we do not now extend the application of that decision beyond the facts there and here involved, and our opinion must be considered accordingly. If instances arise where the doctrine of the *Anaconda Case* is invoked regardless of the nature of the subject (quartz-mining property held by title of co-tenancy), the Court may not go as far as counsel for these respondents say it must. For example, as intimated in *Harrigan* v. *Lynch,* 21 Mont. 36, 52 Pac. 642, we doubt whether the legislature meant to or could allow one co-tenant of an unpatented mining claim to prevent his co-tenant from doing annual representation work, failure to do which would result in a loss of the property of the co-tenancy, or whether A., a co-tenant in an irrigating ditch, with a right to the use of water flowing therein, can enjoin his co-tenant, B., from the use of the water, provided A. is not using the same. Nor do we believe a nonconsenting co-tenant could always have the same judgment against his co-tenant for an act which, if committed by a stranger, would be a trespass; for what would be a trespass by a stranger would not necessarily be a trespass by a co-tenant. Other illustrations might be made to show the necessity of always applying the law of the *Anaconda Case* with reference to the facts and kind of property involved. But, as to rights of co-tenants in mining claims under certain conditions, its particular doctrine has been affirmed in *Red Mountain Consol. Mining Co.* v. *Esler,* 18 Mont. 174, 44 Pac. 523, *Connole* v. *Mining Co.* 20 Mont. 523, 52 Pac. 263, and *Harrigan* v. *Lynch, supra,* and is too firmly implanted to be uprooted and cast away. Nevertheless the statute under which the decisions cited were rendered has been amended; so to the amended law and its effects we turn our attention, that we may determine how mining co-tenants in Montana now stand towards each other.

The law of 1899 (Sess. Laws 1899, p. 134) is an amendment to the original Code section; it re-enacts Section 592 without change, and then adds certain limitations and qualifications by way of exceptions or provisos. The effect of the

provisos is to restrict the operation of the general language in the first clause of the bill, which was the old section unaltered, by giving to the subject-matter thereof a qualified operation, merely, as to the cases included in the words of the exception. "A proviso is something ingrafted upon a preceding enactment, and is legitimately used for the purpose of taking special cases out of the general enactments, and providing specially for them." (Potter, Dwar. St. p. 118) There was no repeal of Section 592, expressly or by implication. A repeal signifies an abrogation of one statute by another. (Sutherland on Statutory Const. p. 177.) The old law (Section 592) copied into the amended statute is not to be considered as repealed and again enacted, but to have been the law all along, while the portions in the provisos are to be regarded as effective only since the enactment of the amended law. (*Ely* v. *Holton,* 15 N. Y. 595.) We state the foregoing principle of statutory construction to answer the argument of one of the several briefs of respondents, asserting that the statute of 1899 was a repeal of the former law. There is nothing in the provisos so repugnant to the original statute that the new law abrogates the old one; if there were, the repugnancy would exist between the several portions of the amended law as it stands today. But such a construction, unless unavoidable, is wrong. The theory of the amended statute seems to be this: Under the older statute, as practically construed after the Anaconda decision cited, it was believed that one co-tenant could not work his mine owned in co-tenancy, and take out and sell his ore, without the consent of his co-tenant. The effect of this condition of the law was looked upon as unfortunate for the state. So the legislature concluded to modify the statute by taking out from the sweeping restrictions of Section 592 certain limitations which controlled the relations of co-tenants to one another, and to provide specially for them. Nonaction of co-tenants meant the idleness of a large class of property, and, evidently with a determined purpose to allow use and enjoyment by one co-tenant wishing to use and enjoy the common property, the amendment was made.

The first paragraph of the proviso is general. It extends to every co-tenancy, and to all kinds of property capable of occupancy held by tenancy in common, including real estate, mines, and all other. If A. and B. are co-tenants in a tract of 160 acres, and A. lives on 40 acres, which he has fenced in, while the rest of the tract is unfenced, yet A. attempts to exercise and assume exclusive ownership of the whole 160-acre tract, B., who has not had any actual possession and occupancy or use or enjoyment of the tract, or any part thereof, can certainly go upon that portion of the tract not within the fence of A., and enjoy all rights of occupancy of such unfenced portion, provided, always, he commit no waste; for B. is within the proviso amending the original law. And, when B. has so entered the unused tract, if he fence and occupy the same, A. has neither any action against him for such entry and occupancy, nor can he prevent B. from the enjoyment of all rights of occupancy of the tract so entered upon.

In mining property this general modification applies, also, but we must not overlook the nature of the property. If A. and B., as co-tenants, own a mining claim, and A. assumes and exercises exclusive ownership, by calling it his own, and goes upon it, but will not work it himself, and denies his co-owner a right to work thereon, B. can go onto such mining claim, and enjoy all the rights of occupancy of the mine, by mining and selling the ore, without doing waste. This is B.'s right under the amended statute. Out of an abundant caution, the legislature, in enacting the proviso affecting mining property owned by co-tenants, and to guard against misinterpretation, provided that nothing should prevent occupancy and enjoyment, and that, "in the case of mining property, from mining the same in a miner-like manner, and extracting, milling, and disposing of the ore from the common property, paying its or their own expenses, and subject to accounting to the non-joining co-tenant or joint tenant for the net profits of such mining operations, if any made; and all liens for labor and materials incurred in such mining shall attach only to the undivided interest or interests of the work-

ing co-tenants or joint tenants." This right was in turn cautiously restricted by the last clause of the act, providing that "nothing herein shall prevent or preclude the co-tenant or joint tenant, not joining in the operation of such mining property from receiving his, its, or their proportionate share of all ore or ores on the dump upon payment or tendering payment of the actual cost of mining the same." The two last exceptions or provisos should be construed to carry out the object of the law; that is, to permit mines held in co-tenancy to be worked by one co-tenant, provided, only, his co-tenant's rights are guarded and preserved exactly as the statute says they shall be. But the right to work and extract the ore and sell the same is given where formerly it had not been. This privilege of working the mine and disposing of the ore is a valuable one, and carries with it correlative obligations, without which the privilege cannot be availed of. The enjoyment of the right is not to be had without the fulfillment of the obligation; for the law is jealously careful of the rights of the nonworking co-tenant, and, in certain terms, protects him by several possible ways. "We give to one co-tenant a right to mine and sell the ore," the legislature have said, "because we believe it policy to open the mines of the state, and to change the policy which had a contrary tendency, but we have not done so without protecting you nonjoining co-tenants so thoroughly that you need fear no invasion of your rights." Now, how has this protection been bestowed? First. The working co-tenant must mine in a miner-like manner. This at once prevents the impairment or ruin of the property by unskillful or injurious methods,—methods which would justify the condemnation of disinterested persons who are practiced and expert in the conduct, operation and management of mines similarly situated. Second. Such working co-tenant must pay his own expenses. He may do this from the sale of the ore taken from the mine, but he makes the sale subject always to an accounting to the nonjoining co-tenant for the profits. If there be profits, he must pay over to his co-tenant, while, if there be no profits, but losses, he alone

must suffer, for he cannot call on the nonjoining co-tenant to contribute in any way. Third. The working co-tenant can incur no liability which can fasten a lien upon the interest of the non-working co-tenant. No matter what extravagance the working co-tenant is guilty of, the nonjoining co-tenant can rest perfectly satisfied that his own interest cannot be tied up or endangered. Fourth. If the nonjoining co-tenant is not pleased with the right to an accounting, but prefers to take his share of the ore, he may elect to do so, and may take it on the dump, upon tendering to his working co-tenant payment of the actual cost of mining the same.

It will seldom occur that co-tenants in a mine will disagree so radically that there can be no practical operation of their property under this amended statute; for, if the working co-tenant mines in a miner-like manner, there will usually be enough confidence in him by his nonjoining co-tenant to accept an accounting, if full, and accompanied by vouchers of shipments, assays, returns, etc. But, if all mutual confidence be gone, the nonworking owner still has the other resort by which to protect himself. He can take in kind, and get every pound of ore belonging to him as it is laid down on the dump by his working co-tenant; and, if he does elect to take in this way, it becomes the duty of the working co-tenant to deliver his ore to him, so that he can "receive" it, as the law says he may, and all he need do is to pay or tender to the co-tenant so delivering his proportionate share of the actual cost of mining the ore. If the co-tenants are entirely estranged, it may be a matter of some difficulty for a nonjoining co-tenant to make an exactly correct tender or payment, where he takes in kind; but, if he tender enough, his right to receive becomes fixed, and the working co-tenant refuses to deliver at his peril. Now, the perils of refusing to account honestly, or to deliver the ore on the dump where sufficient money is tendered, lie in the possible stoppage of work by injunction, based upon any proper one or more of the several grounds enumerated in Section 592 of the amended law. Entry and use which would have constituted injury under the former Section 592, do not

under the provisos. On the other hand, to be excepted from the liabilities for injury under Section 592, the co-tenant entering upon the property, and enjoying the rights given by the provisos, must comply strictly with the obligations attached to the privilege of such entry.

To contemplate every situation that may arise upon an entry upon mining ground held in tenancy in common is far too difficult a task to undertake. We can do but little more than express our opinion as to the meaning of the amended statute, and state its usual applicability. The point we would emphasize is this: That, unless a working co-tenant brings himself squarely within the provisos, the policy and letter of the law preserve to his nonworking co-tenant exactly the same actions against such working co-tenant as he had before the amendment was in force.

"Occupancy" of mining property, under the statute before us, implies a substantial and practical use of the earth for the uses for which it was claimed or located, and as contemplated by the claimants and locators. When a man occupies a dwelling house, his character of occupancy is with reference to the purposes for which the house was built—he lives in it; when he occupies a barn, his occupancy is complete, under the law, if he puts his horses and wagons in it; that is, an occupancy of property is to be understood with reference to the nature and character of the property involved. To occupy mining property, and to enjoy the right of occupancy, under the statute, is to mine the same in a miner-like manner, and to extract ore from the same, mill it, and dispose of it, and not to merely go upon it, yet refuse to dig and mine the ground. If there is such an occupancy and mining on the part of one co-tenant, the statute does not always give to another co-tenant an equal right to mine elsewhere on the same claim; for an occupancy and enjoyment may not always be consistently had by several co-tenants mining at the same time at several points in a single mine. The very statement of the proposition that several owners, unable to agree, can yet carry on mining of their one quartz claim by operating at different

points would seem to be pregnant of conflicts with the rule which should invariably prevail,—that there shall be no mining except in a miner-like manner; for it needs no technical knowledge to assert that a system of varying methods might often be followed by great injury to, if not ruin of, the common property. We can safely say, therefore, that these rights or privileges of occupancy must be construed by the courts with a view to preserve the property for the common use to which it may properly be put, and at the same time the manner of use should be confined to that which is usual and common in the practical enjoyment of mining claims.

After the valuable right to mine is availed of by a co-tenant, and work is once progressing, then it is to the co-tenant who is opposed to work at all that the law gives its careful protection,—to the unwilling one, the perverse one, or the one who could prevent any mining of the common property were it not for the proviso of the new law,—not the one who is a worker and wants to enjoy the proceeds of the mine; for the worker will be well able to look after his own interests by his actual control of the property. Several co-owners may disagree between themselves as to what is a miner-like manner of working their claim, yet agree to work it when that question has been settled, while another co-tenant will be a dissenter from the doing of any work. The differences of those who fall within the one class will not be hard to adjust, and, when adjusted, disagreements as to other matters will rarely ensue; but while the owner who does not want the property worked at all cannot accomplish all he would wish, as against his co-tenants who want to work, nevertheless he can prevent their going ahead against his will unless they do so with due and exact regard to his rights as a nonworker.

Having concluded our expression of what we conceive to be the law to control cases like the present one, we believe that under the facts the defendants, who are mining through the Rarus shaft, should have been enjoined *pendente lite.* The situation is peculiar, and, under the circumstances, becomes such that the nonjoining co-tenant, plaintiff, may appeal to

the court to prevent further danger to its rights likely to happen by allowing defendants to take ore out of the Snohomish and Tramway mines through the Rarus shaft.   The Rarus is in itself an independent, operated mine, to which plaintiff has no legal right of access.   It follows that, where the ores from the Snohomish and Tramway and Rarus are all brought to the surface through said shaft, plaintiff cannot elect to take in kind, with a knowledge of just what proportion of the ore so brought to the surface is its share of the ores of the Snohomish and Tramway.   The certain knowledge which plaintiff says it must have to afford it that adequate protection which the law gives is not available, apart from the statements of defendants, upon which plaintiff need not, and evidently does not, rely.   Physical conditions thus enable defendants to impede the plaintiff in its absolute right to have secured to it a literal fulfillment. of the obligations the defendants assumed in mining the Snohomish and Tramway claims.   Damages may be irreparable by a continuance of the conditions.   A co-tenant in plaintiff's position should be able to receive its ore on the dump, knowing that it has every pound forthcoming to it, and satisfied that, of every car load brought to the surface, its proportion is fixed, dependent solely upon the arrival of the car at the surface, and the quantity of its contents, and not upon the character of the ore, or the subtraction of any portion thereof, based on the claim that it has come from another property, in which plaintiff has no interest, and to which it has no access.   Interference with this right of plaintiff is cause for action, and injunction to stop mining so conducted will lie.

An offer to account will not remove the ground of complaint, nor is plaintiff to be denied injunction because it failed to tender or pay its proportionate share of the cost of mining, inasmuch as it is excused from such tender or payment, as the facts show it could not accurately tell what ores it was entitled to, in order to estimate the amount of the tender.

The question of the constitutionality of the amended statute was raised by plaintiff; but as we hold the court erred in de-

nying plaintiff's motion for an injunction *pendente lite*, on the grounds discussed, we will reverse the order made in this respect, reserving an opinion upon the constitutional questions.

The order dissolving the temporary restraining order is affirmed. The order denying an injunction *pendente lite* is reversed. Cause remanded, with directions to proceed accordingly.

*Remanded.*

Rehearing granted June 7, 1900.