LITTLE MOTOR KAR CO. et al. v. BLANKENSHIP et al.    (No. 8535.)

(Court of Civil Appeals of Texas. Dallas. Jan. 22, 1921. Rehearing Denied March 5, 1921.)

1. **Appeal and error** ⬥71(4) — **Motion to vacate receivership held motion to vacate appointment rendering order denying motion appealable.**

In a suit by stockholders against a corporation and its managing trustees for fraud and dissipation of assets, wherein receiver was appointed, motion of intervening successor trustees that the receivership be vacated, dissolved, and terminated *held* to come within Vernon's Ann. Civ. St. Supp. 1918, art. 2079a, as motion to vacate order appointing receiver, rendering the interlocutory order overruling the motion appealable.

2. **Receivers** ⬥58—**Court, under allegations of interveners, erred in declining to receive evidence on point whether receivership should be vacated.**

In suit by stockholders against the corporation and its managing trustees for fraud and dissipation of assets, wherein successor trustees intervened and sought vacation of the receivership, allegations of the interveners *held* sufficient to admit evidence on which the vacation order prayed for would be authorized, so that the trial court erred in declining to receive the evidence, the court not having exercised his sound discretion in the premises, but having refused to put himself in a position to exercise it by sustaining demurrers instead of hearing the evidence.

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

Suit by A. E. Blankenship and others against the Little Motor Kar Company and others, wherein, after appointment of receiver for defendant company, J. W. Payne and others intervened. From order denying vacation of the receivership, interveners appeal. Reversed and remanded.

See, also, 224 S. W. 210.

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Hatcher & Zumwalt, Rasbury, Adams, Stennis & Harrell, and Chas. F. Greenwood, all of Dallas, for appellants.

Allen Wight and Thomas, Milam & Touchstone, all of Dallas, for appellees.

HAMILTON, J. This is an appeal from an interlocutory order made in this case by the judge of the Sixty-Eighth judicial district.

Originally suit was brought by appellees against Little Motor Kar Company as a distinct entity, and against its three trustees individually. The trustees were exclusively managing its affairs at the time the suit was filed by appellees, and they seem to have been the exclusive managers of the company continuously from its beginning until the filing of the suit. Appellees' original petition extends to very great length in describing the wrongdoings of the individual defendants in their relations to the defendant company during the course of their trusteeships. Appellees alleged facts setting forth gross misconduct on the part of the trustees; facts showing fraud and fraudulent and unlawful schemes of selling the company's stock; appropriation to themselves against the interests of all other shareholders of the assets of the company; the wrongful transfer of cash in bank from the credit of the company to the credit of some of the individual trustees; and general unconscionable exploitation of the company's assets. Although appellees have named Little Motor Kar Company as a defendant, they have made no allegation against it, but, in stating their cause of action, have confined themselves entirely to charges of looting and exploitation of it by the individual defendants, and in the prayer of the petition they have asked no relief against it, but have prayed for certain action, in its behalf, as well as in behalf of themselves, against the individuals sued jointly with it, and who were the trustees of it, as above stated.

The prayer is for the immediate appointment of a receiver to take over the property and assets of the defendant company and administer them; for an order requiring the individual defendants, trustees of the company, "to turn over all books and records of the company or pertaining to its affairs, including the records pertaining to the sales of its shares, as well as all other property or assets belonging to defendant company in the individual defendants' possession" for an audit; for an accounting to be made by the individual defendants of all sums received by them "in any way or manner connected with the promotion, organization, or operation of the defendant company"; and for an injunction to restrain the individual defendants from secreting records and from acting in any way in relation to the affairs of defendant company beyond paying certain generally designated expenses. There is also a prayer for judgment "in favor of defendant company and against the individual defendants" for $600,000, for cancellation of the individual defendants' stock in the company, except whatever they paid for in actual cash; for restitution of salaries paid to them, and for removal of them as trustees.

We have thus stated the prayer of the petition, because it seems that a clearer conception of the nature of appellees' contentions can thus be conveyed than by undertaking to set out a detailed statement of the allegations themselves. We find in the petition no allegations which seem to constitute a set of facts showing a cause of action on the part of plaintiffs personally against the defendants, and we take it that the plaintiffs themselves so view the allegations, because they seek no relief personally except whatever might incidentally accrue to them as shareholders by virtue of the different orders specifically called for in behalf of the defendant company.

The petition having been filed April 8, 1920, and presented to the judge of the district court, he on the same day granted the injunction and appointed a receiver in conformity with the prayer of the plaintiffs, his action being based altogether upon the allegations of the petition, the verification of which was in part, as to the most material allegations, upon actual knowledge of one of the petitioners, and in part, as to some of the most material allegations, upon information and belief.

Subsequently, on May 20, 1920, following an order of court granting leave to intervene, appellants, as interveners, filed their plea of intervention and motion "to dissolve and vacate the receivership," and on June 7, 1920, filed their amended plea of intervention and motion to the same effect, and on June 15, 1920, interveners J. W. Payne, C. M. Ward, and W. E. Joor filed still another intervention, in substance the same as that already filed, and in addition alleging that they had lawfully succeeded to the office of trustees of the company, the original trustees, defendants in the suit, having resigned, and that interveners were entitled to have the management and control of the defendant company's affairs to the entire exclusion of the receivership.

The other interveners alleged that they were stockholders in the company, and that, while 1,020,000 shares of the par value of $1 each were held by shareholders residing throughout the United States and in foreign countries, they sued for themselves and nearly 2,000 of the shareholders living in Texas and owning 250,000 shares. They alleged that the trustees against whom plaintiffs had alleged fraud in methods of organization and management, unconscionable manipulation in stock selling, looting of funds, etc., had already resigned, that a lawful and qualified shareholders' meeting had accepted the resignations and had lawfully elected Payne,

Ward, and Joor as their successors, thereby eliminating any continuance of the misconduct and destructive criminal transactions which plaintiffs alleged would necessarily and inevitably bring the company into insolvency. They also alleged that the plaintiffs altogether had title to only 300 shares in the company of the actual value of only $200, and that they paid nothing for it, but acquired it from the very individual defendants whom they sued, and that the circumstances of their acquisition of it were such that they had received no lawful title to it, and the company had received no consideration for it, and that therefore the plaintiffs, appellees here, had no rights or interests to be protected by suit, and could not for that reason maintain an action, or at least such rights and interests as they claimed were doubtful. They also alleged that the company was solvent, and that its assets in Texas amounted to $500,000, besides $60,000 cash in bank, and that it did not owe more than $15,000, which was owing only for current expenses. They pleaded that the company owned at Dallas a fully equipped factory for the manufacture of automobiles, and that it has on hand large quantities of material out of which to manufacture automobiles to the profit of the shareholders, and, being thus equipped and provided, could resume and continue the manufacturing of automobiles, except for the existence of the receivership; that the receiver is without experience and training necessary to render him capable of successfully conducting the manufacturing, for the purpose of which the company was formed and the plant constructed; and that the shareholders will suffer great loss if the property is held in idleness or sold by the receiver. Besides the property situated in Texas alleged to be of value in excess of $500,000, appellants alleged the company owned other property outside of Texas, consisting of real estate and personal property of the value of $50,000.

Plaintiffs in reply to the interveners' allegations filed a general demurrer, and the following special exceptions: An exception to the allegations that resumption of manufacture by the company would result in dividends to shareholders, because it does not appear that manufacturing operations could be adequately financed, nor that the company's affairs would be prudently managed, and because it appears from the pleadings of interveners that facts and circumstances sufficient to justify a reasonable prospect of profitable operation of the properties do not exist; an exception to those parts of the interveners' pleadings declaring that unless the receivership is abated the assets will be exhausted, and that the shareholders will receive little, if anything, upon their shares, because such allegations comprise only conclusions of the pleader; an exception to interveners' allegation that they are authorized to represent, and do represent, 2,000 shareholders owning 250,000 shares of stock, because the names and residences of such shareholders and the respective numbers of shares held by them are not stated, nor the nature of the authority indicated. These exceptions are followed by a general denial and various special allegations, none of which it is necessary to set out here.

The above-named exceptions were presented to the court on June 21, 1920, and all of them were sustained, and the motion embodied in appellants' pleadings was overruled without any evidence being received.

[1] The appeal to this court is met at the threshold with appellees' motion to dismiss the appeal, because the order from which the attempt to appeal is made is an interlocutory order refusing to discharge the receiver and terminate the receivership, and is not an order refusing to vacate the order appointing the receiver, and we are asked to dismiss for lack of jurisdiction. Counsel for appellees support the motion with an exceptionally strong and exhaustive argument. Notwithstanding the outstanding clearness and logic of this argument, we do not believe the objective sought by the interveners in their pleadings was to terminate the receivership and discharge the receiver as distinguished from vacating the order. Of course it is elementary that an appellate court can acquire no jurisdiction on appeal from an interlocutory order except by express statutory provision for it. There being no statutory authority for appeal from an interlocutory order refusing to terminate a receivership and discharge a receiver unrelated to the idea of setting aside the original order of appointment, then appellees' conclusion deduced from counsel's able argument is correct, unless the motion can soundly be construed to come within the scope of article 2079a, Vernon's Ann. Civ. St. Supp. 1918, specially providing for appeal from an interlocutory order refusing to vacate an order appointing a receiver. That article is as follows:

"An appeal shall lie from an interlocutory order of the district court overruling a motion to vacate an order appointing a receiver or trustee in any case, provided such appeal be taken within twenty days from the entry of such order appealed from. An appeal in such cases shall take precedence in the appellate court; but the proceedings in other respects in the court shall not be stayed during the pendency of the appeal, unless otherwise ordered by the appellate court."

The prayer of the motion in response to which the proceedings resulting in the judgment appealed from is that the receivership be vacated and dissolved and terminated. Looking alone to appellants' (interveners') prayer and applying the statute to it independent of the preceding allegations, we

might be constrained to support the vigorous contention made by appellees to the effect that the appeal does not rest upon the authority of article 2079a. But looking to the pleading as an entirety and giving consideration to all therein contained, as we ought to do in order to arrive at the purpose sought and also in order to arrive at a conclusion with reference to the sufficiency of the allegations as a basis for the relief sought, we do not think we can correctly hold that the motion is not a motion to vacate the order of appointment, but is rather a motion to close the receivership and discharge the receiver on the ground that valid and proper purposes of the receivership existing at the time of its creation had all been achieved and the necessity for it thereby ended.

In determining the nature and object of the motion, so as to be able to say whether or not it is one to vacate the original order appointing the receiver as contradistinguished from one to close the receivership and discharge the receiver, the correct test, we think, is whether or not the allegations, as such, state facts challenging the validity or propriety of the appointment itself and attacking the soundness and correctness of the action of the court in the first instance, or set forth facts independent of and unrelated to the achievements of the receiver in the course of his administration, which arose subsequent to the appointment and worked a removal of necessity for any further acts of the receiver, regardless of whether or not he, as receiver, had accomplished all the things for which he was appointed.

Referring to the pleadings which form the motion, we find what we consider to be three sets of allegations, which, taken together, meet this test and conform the motion to it, making the motion one to vacate the order of appointment. And as we interpret the allegations there are none upon which the receivership could be terminated because it had run its course to the end and performed all the offices for which it was brought into existence, and hence there are no allegations giving the motion the necessary attributes of a motion to discharge the receiver. The three allegations referred to are these: First, that the plaintiffs had no right or interest in the company upon which to invoke the action of the court; second, that the pilfering trustees, against whom exclusively the allegations made by appellees were leveled, had been lawfully displaced and succeeded by legally constituted and elected trustees of high character and ability; third, that the company was possessed of assets much in excess of $500,000, and owed nothing except for current expenses in an amount not exceeding $15,000, and was equipped and supplied with material for the profitable manufacture of automobiles, in the manufacture of which it was engaged when the receiver was appointed, and the profitable manufacture of which would be resumed, if the property were taken from the receiver and delivered to the new trustees, alleged to have the lawful right of possession.

The first and third of these allegations relate exclusively to conditions alleged to have existed at the time of the appointment, and show reasons which, if actually and truly existing, would vitiate the appointment of the receiver. The secondly named allegations, those alleging the resignation of the objectionable trustees and the legal selection of unobjectionable ones, meet the requirements of the test we are applying because the facts recited are descriptive of a condition entirely different from that appellees alleged to obtain the appointment; not a condition wrought in the receivership, so that a motion to close the receivership might be urged upon the ground that the activities of the receiver had made a situation calling for no further procedure, but a condition produced wholly independent of the receiver, cutting from under him the very ground of his appointment.

We are aware of the fact that the last-considered set of allegations held by us to contribute, in connection with the others, to giving the motion the quality of one to vacate the order of appointment can be challenged as conflicting with respectable authority. We are also keeping in mind the clear distinction which in law exists between a motion to vacate an order appointing a receiver and a motion to terminate the receivership, the former usually having regard only for "conditions and circumstances attending the appointment." But we have concluded that the sounder course to pursue is not to restrict the sense in which an order to vacate the appointment is understood exclusively to such conditions and circumstances, but to extend it so as to comprehend the setting aside of the order for clearly established sufficient reasons which may arise subsequent to the order of appointment, and become coexistent with such grounds as the other two alleged for vacating the order in this case. February 28, 1899 (Laws 1899, p. 146), the Legislature of Montana enacted a statute allowing an appeal "from an order appointing or refusing to appoint a receiver, or giving directions with respect to a receivership, or refusing to vacate an order appointing or affecting a receiver."

Treating a motion to vacate an order appointing a receiver the Supreme Court of Montana, with reference to this statute in the case of Forrester v. Consolidated Mining Co., 24 Mont. 132, 60 Pac. 1089, say:

"It is contended by the plaintiffs that the consideration of any matters happening since the order appointing the receiver was entered was immaterial upon the motion to vacate that order. This position is based upon the assump-

tion that the statute allowing an appeal from an order refusing to vacate the appointment of a receiver permits a review of those facts only which existed when the order of appointment was made, and that the necessary effect of the vacation of an order appointing a receiver is to annul or avoid such order from the beginning; in other words, to destroy the order, and declare void everything done under it. The word 'vacate,' however, as employed in the act of February 28, 1899, supra, is not so to be restricted in its meaning. The statute should be understood also as creating the right to appeal from an order refusing to vacate the order of appointment where the motion to vacate is based, not upon the conditions existing when the order was made, but upon facts occurring subsequently to the making of the original order; and in the case of such a motion the vacation of the order appointing the receiver is neither more nor less than the discharge of the order after it has served its purpose. Where the order appointing a receiver is vacated for reasons arising after the appointment was made, the vacation or discharge takes effect as of the day it is entered, and all acts theretofore lawfully performed in pursuance of the appointment are valid. The offer made by the defendants, which the court should have required the plaintiffs to accept, renders it unnecessary to continue the receivership for the purpose of an accounting. The order refusing to vacate the order of December 15, 1898, is therefore reversed, and the cause is remanded, with directions to the court below and its judge to admit the evidence and the offer excluded, and proceed to hear and determine the motion in accordance with the views herein expressed."

Of course, if the interveners should adequately sustain their allegations and thereby obtain the order sought, its ultimate effect so far as they are concerned would be to terminate the receivership and discharge the receiver. But this is no sound reason for declaring the motion not to be a motion to vacate or set aside the order of appointment. The same final effect would result from any order to vacate the appointment under whatever circumstances made. Both an order vacating the appointment and an order discharging the receiver, regardless of the characterizing distinctions between them, operate to end the receivership. In this particular the two orders, however much otherwise distinguished, always result in the same effect.

But appellees urge that in express terms appellants themselves define their motion, specifically and conclusively designating it not to be a motion to vacate the appointment. The language of appellants' pleadings upon which appellees base this particular contention is as follows:

"In this connection your interveners say that they are not now objecting to the appointment of the receiver herein, but are objecting to any acts of the receiver in disposing of property of the Little Motor Kar Company of any kind or character whatsoever, and object to the continuation of the receivership."

This language is the final portion of a paragraph not contained in the original motion, but in appellants' answer to the appellees' replication attacking their motion. The part of the paragraph preceding it and with which it is connected denies appellees' allegations that—

"No shareholder of the company has, in truth and justice, any valid or reasonable objection or exception either to the appointment of such receiver, at these plaintiffs' suit, or to any act of such receiver since his appointment and qualification."

The excerpt quoted from the supplemental pleading filed by appellants in response to appellees' replication to the motion cannot be set apart from the entire body of the allegations and made the criterion by which to determine what the motion is. The utmost the excerpt can be said to constitute is no more than appellants' concept of the ultimate effect of their allegations. It does not determine the technical nature of the order sought.

The allegations themselves conflict with appellants' statement quoted by appellees, and the allegations do attack the validity of the appointment ab initio. It is the court's function and duty to construe the allegations altogether, and say whether or not, in considering the question at issue, they meet the requirements of a motion to vacate. Having concluded they are sufficient for that purpose, and that a fair construction indicates that they were directed to that end, we overrule the motion to dismiss.

[2] The only other principal question to be disposed of is whether or not the appeal presents error in the court's action sustaining the demurrers and refusing to hear the evidence. Appellees contend that the overruling or sustaining the motion was discretionary with the trial court. This being conceded, yet in this as well as in all other matters involving discretion, it must be soundly exercised, and the order entered being one from which an appeal lies, the judgment sustaining the exceptions will be reviewed and tested by the assignments of error complaining of it, as in the case of any other judgment properly appealed from. As before indicated, we consider the allegations sufficient to admit evidence upon which the order prayed for would be authorized, and accordingly the court erred in declining to receive the evidence. While the disposition to be made of the motion was a matter resting in his sound discretion, he did not exercise it, but refused to put himself in a position to exercise it by sustaining the demurrers instead of hearing the evidence.

Appellees complain of certain irregularities and variances from the rules in the process of briefing pursued by appellants. The brief,

notwithstanding the infirmities pointed out by appellees, is nevertheless an orderly and clear presentation of the complaints directed against the action of the trial court. Besides we doubt that the presentation of an appeal of this character could be held to strict conformity with the rules. Tyree v. Road Dist., 199 S. W. 646.

Appellees challenge appellants' right of appeal upon the authority of the case of Stewart v. State, 42 Tex. 242. In that case an exception to the petition in intervention was sustained, and from the order sustaining the exception and dismissing the intervention, Stewart, the intervener, appealed. In dismissing the appeal the Supreme Court acted upon the well-known general principle that an appeal lies only from a final judgment, and in conformity with the rule arising out of that principle held that the appeal should be dismissed because the suit between the original parties had not come to final judgment, but was still pending. Here, however is an altogether different situation. The cause has not gone to final judgment, it is true, but appellants, who, although interveners, are appellees' only real adversaries in the case, are appealing from an order from which by statutory enactment any party is privileged to appeal. The effect of the statute allowing an appeal from this order is to place the order on the same footing with a final judgment in relation to the right of appeal therefrom. This being so, this appeal is not ruled by the Stewart Case, supra.

The nature of the organization which bears the name "Little Motor Kar Company," and made a defendant here in that name, is brought into issue by appellees in a counter proposition to the first assignment of error, under which counter proposition it is declared that it is a joint-stock company, and that the trustees, as such, cannot intervene, and be heard to complain, the company itself already being an original party to the suit. The interveners are not in the case under allegations that they sue solely as trustees. They sued for themselves and others as mere stockholders also. But regardless of this, we cannot consider the argument made by appellees, based upon the assumption that Little Motor Kar Company is a joint-stock association. The record before us in no way discloses the nature of the organization to the extent necessary to enable us to know whether it is a partnership or a joint-stock company or a trust as distinguished from a partnership and a joint-stock association.

In the event of an appeal from a final judgment it might become proper to determine the nature of the organization as affecting the rights and relations existing among the parties. Bingham v. Graham, 220 S. W. 105; Davis v. Hudgins, 225 S. W.

74. But no such requirement arises in disposing of the case as presented in this appeal.

For the reasons indicated, the judgment is reversed, and the cause remanded.

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes