## DAY v. JONES et al.

No. 7062.  Decided November 24, 1947.  (187 P. 2d 181.)

288

See 6 C. J. S., Army and Navy, sec. 37. Soldiers' and Sailors' Civil Relief Acts, see note, 158 A. L. R. 1456. See, also, 36 Am. Jur. 273.

*Cline, Wilson & Cline*, of Milford, for appellants.

*C. Nelson Day*, pro se.

LATIMER, Justice.

Appeal by defendants J. George Jones Jr. and wife from a portion of a decree entered in this cause by the District Court of the Fifth Judicial District quieting title in the plaintiff and against the defendants to a tract of farm land in Millard County. The county and all unknown parties defendant defaulted. Only the two appealing defendants resisted the action. They filed an answer denying plaintiff's title, and later an amended answer alleging that they had purchased the land in dispute from Millard County and received from it a deed of conveyance and that the defendant J. George Jones, Jr., is the legal owner of the premises and entitled to the possession thereof. Appellants also counterclaimed for the value of improvements they had placed upon the land, in the event that the question of title should be decided against them.

There is little dispute as to the facts. The plaintiff acquired title to the land in 1940 by deed from the former owner. At that time the land was fenced on three sides; about 30 acres had been cleared and cultivated in 1926 but

not thereafter, and 50 acres was in its native state with a growth of sagebrush thereon. The general taxes assessed on the land for the years 1938 through 1943 became delinquent and were never paid by the plaintiff. A certificate of sale was issued to Millard County by the county treasurer for the 1938 delinquent taxes, and there being no redemption the property was sold by the county at the Statutory May sale in 1943. The 80 acres in controversy were purchased by defendant J. George Jones, Jr., and Millard County issued its tax deed to Jones therefor.

At the time of plaintiff's acquiring title to the land he went upon it, walked around it, and made plans to cultivate and improve it. The property was farm land, located in a farming community, though the plaintiff did testify it could be used for dwelling purposes. The plaintiff further testified that the general utility of the land was for agricultural purposes, i. e., farming, raising, and producing crops. With regard to the use to which the land was put by the plaintiff during the period of his ownership, and until he entered the military service, the evidence was that the plaintiff did nothing about farming the land because he had no capital with which to carry out his plans; that neither himself nor any one else worked on the land, cleared or plowed it; that he never lived on it, never farmed it, never grazed any cattle on it, and never leased it to any one to farm or graze livestock on; and that the extent of his possession of the land was that he went by it several times, once or twice a year.

Plaintiff was inducted into the service of the U. S. Army on March 4, 1943, entered active duty March 11, 1943, and continued in such service until June 3, 1946, when he was honorably discharged. Plaintiff had no knowledge that his land had been sold by the county for taxes, until about August 1, 1943, at which time he wrote the purchaser, J. George Jones, Jr., a letter advising him that he the plaintiff was still the owner of the land, under the operation of the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U. S. C. A. Appendix, § 501 et seq. Defendant ignored this letter,

so plaintiff again wrote, in March, 1944, the second letter being returned to him with defendant's notation reading, "County officials informed me that sale was in good order."

Some time after this exchange of correspondence between the parties, the defendant Jones commenced making extensive improvements upon the land, which consisted of preparing it for cultivation by clearing, plowing and leveling the ground, and constructing ditches and headgates for irrigating the land. Defendant Jones raised and harvested several crops, harvesting one crop and planting another after this action was commenced. Defendants contended at the trial and before this court that the improvements were made in good faith and that they, as occupying claimants, are entitled to be reimbursed therefor in the event the plaintiff's title be adjudged to be paramount. Plaintiff, on the other hand, maintains that since defendants had notice of his claim before the improvements were made, the latter did not act in good faith in going ahead with the improvements; hence, that the defendant is entitled to nothing for what he added to the land, but instead is indebted to plaintiff for its use.

The appellants, defendants below, assign several errors, which can be grouped under two propositions: (1) The trial court erred in holding that the plaintiff is entitled. under the provisions of the Soldiers' and Sailors' Civil Relief Act, to set aside the sale of his land by the county for taxes; and (2) The trial court erred in deciding that the defendants are not entitled to reimbursement for the value of improvements made upon the land as occupying claimants.

The plaintiff based his right to set aside the tax sale upon the following provisions of the Soldiers' and Sailors' Civil Relief Act:

(1)    Section 560, Title 50, War, Appendix, U. S. C. A. referred to in the briefs as section 500 of the Act:

"(1) The provisions of this section shall apply when any taxes or assessments whether general or special (other than taxes on income), whether falling due prior to or during the period of military service, in respect of personal property, money, or credits, *or real property*

*owned and occupied for dwelling, professional, business, or agricultural purposes by a person in military service or his* dependents at the commencement of his period of military service and still so occupied by his dependents or employees are not paid. (Italics ours.)

\* \* \* \* \*

"(3) When by law such property may be sold or forfeited to enforce the collection of such tax or assessment, such person in military service shall have the right to redeem or commence an action to redeem such property, at any time not later than six months after the termination of such service, but in no case later than six months after the date when this Act ceases to be in force; but this shall not be taken to shorten any period, now or hereafter provided by the laws of any State or Territory for such redemption." Oct. 6, 1942, Ch. 581, 14(a), 56 Stat. 776.

"(2) Section 525, Title 50, War, Appendix, U. S. C. A., referred to in the briefs as section 205 of the Act: 'The period of military service shall not be included in computing any period now or hereafter to be limited by any law, regulation, or order for the bringing of any action or proceeding in any court, board, bureau, commission, department, or other agency of government by or against any person in military service or by or against his heirs, executors, administrators, or assigns, whether such cause of action or the right or privilege to institute such action or proceeding shall have accrued prior to or during the period of such service, *nor shall any part of such period which occurs after the date of enactment of the Soldiers' and Sailors' Civil Relief Act Amendments of 1942 [Oct. 6, 1942] be included in computing any period now or hereafter provided by any law for the redemption of real property sold or forfeited to enforce any obligation, tax, or assessment.*' " (Italics ours.)

In order for plaintiff, respondent herein, to successfully claim the six months' time in which to redeem after the termination of his service, as provided in section 560, the land in question must have been owned and occupied for dwelling, professional, business, or agricultural purposes. The respondent contended at the trial below and the court so found that he was in occupation of the land for agricultural purposes, but with such contention and finding we cannot agree. The respondent testified that he never lived on the land, never farmed it, never grazed any cattle on it, and never leased it to another to graze cattle upon or farm. Instead, his testimony as to "occupancy" was that he went upon the land immediately after buying it;

that he "assumed control" of it; and that he rode past it two or three times a year to see if any one was trespassing upon it. When he entered military service, his father gratuitously consented to look after the land for him. Such acts do not constitute an "occupation of the land for agricultural purposes." This court more than 40 years ago gave its opinion on what constitutes an occupation of realty, in the case of *Twiggs* v. *State Board of Land Com'rs*, 27 Utah 241, 246, 75 P. 729, 731. There this court quoted with approval from a decision of the Iowa court:

"*  *  *  In the case of *Fleming* v. *Maddox*, 30 Iowa 239, the court said: '*A mechanic is in the occupation of his shop when he carries on his business; a merchant, of his store; a lawyer, of his office; a farmer, his farm.* It is not necessary to make his occupation complete, that a mechanic should reside in his shop or upon the same lot. *He is in occupation because he uses and enjoys it in carrying on his legitimate calling. So with the merchant, the lawyer, the farmer.*' 21 Am. & Eng. Encyl. Law, 767." (Italics ours)

See also *Davis* v. *State*, 20 Ga. App. 68, 92 S. E. 550, 551; *Butte & B. Consol. Mining Co.* v. *Montana Ore Purch. Co.*, 24 Mont. 125, 60 P. 1039, 1043.

Since the land in dispute was not occupied by the respondent for agricultural purposes, section 560 does not apply and the respondent must prevail if at all, upon the strength of section 525, wherein the act of October 17, 1940, was amended by the addition of the following:

"*  *  *  Nor shall any part of such period (of military service) which occurs after the date of (this amendment) be included in computing any period now or hereafter provided by any law for the redemption of real property sold or forfeited to enforce any obligation, tax, or assessment."

The Congress, by this amendment of October 6, 1942, tolled the running of any period provided by law for the redemption of real property owned by a person in the military service and sold for taxes, without any restriction as to the nature of such real property or the use to which it

was being put. Appellant contends that if this amendment can be construed to prevent a valid sale of all of a serviceman's property including both the class specifically exempted from sale by section 560 and the class not so exempted, then section 560 has no meaning. The amendment does not prevent the *sale* of any property. It merely extends the time for the *redemption* of such property which has been sold or forfeited to enforce any obligation, tax, or assessment. Therein lies the distinction between the paragraphs.

The underlying purpose of servicemen's legislation has been to enlarge, not to restrict or cut down the rights and protection afforded those in the military service. With this thought in mind we briefly review the history of the two statutes under consideration.

On March 8, 1918, the Congress enacted section 205, Ch. 20, 40 Stat. 443, it being section 116, Title 50, War, Appendix, U. S. C. A., which provided that the period of military service should not be included in any period of limitation for the bringing of any action by or against any person in military service. This law was re-enacted verbatim on October 17, 1940. Two years later, on October 6, 1942, the Congress amended it as shown above to specifically include an action by a serviceman for the redemption of his real property sold for taxes.

On March 8, 1918, the Congress also enacted section 500, Ch. 20, 40 Stat. 447, it being section 151, Title 50, War, Appendix, U. S. C. A., relating to the sale of particular types of real property such as home, business and farm, as follows:

"(1) The provision of this section shall apply when any taxes or assessments, whether general or special, falling due during the period of military service in respect of real property owned and occupied for dwelling, or business purposes by a person in military service or his dependents at the commencement of his period of military service and still so occupied by his dependents or employees are not paid .

"(2) * * * no sale of such property shall be made to enforce the collection of such tax or assessment, or any proceeding or action for such purpose commenced, except upon leave of court granted upon an application made therefor by such collector or other officer * * *.

"(3) When by law such property may be sold or forfeited to en-

force the collection of such tax or assessment, such person in military service shall have the right to redeem or commence an action to redeem such property, at any time not later than six months after the termination of such service, * * *."

Subsection (1) was amended October 17, 1940, section 560 by adding the term "agricultural" to those purposes for which the real property was occupied by a person in military service. The Congress again amended the subsection on October 6, 1942, by adding the following types or classes to the list of exempted property: Personal property, money or credits, and real property occupied for professional purposes. Thus the Congress granted further and additional rights to the serviceman, with respect to the types of real property owned by him which could not be sold for taxes without leave of the court first had and obtained.

Section 560 was already in existence, on October 6, 1942, at the time Congress amended section 525. Nevertheless, when viewed in the light of legislative intent and purpose, these two statutes will be found not to be in conflict or in derogation of each other; on the other hand, they will be found to be complementary. Section 560 was obviously designed to protect the serviceman's home, business, farm, or office from even being subjected to sale for taxes. The sale of such property was not absolutely prohibited, however, it still being possible to sell it upon leave of the court as provided in subsection (2). However, in most instances, the serviceman's home, business, farm, or office was by this act effectively protected from being subjected to a sale for taxes.

The types of property protected by section 560 are obviously those which Congress deemed absolutely essential to the well-being of the serviceman or his dependents. Section 525, on the other hand, extends to and includes all real property owned by the person in military service, regardless of type or class. But it does not go so far as to prevent the sale of such property for taxes. Instead, section 525 provides for the redemption of the land after sale. The

immediate purposes of the two paragraphs may be different, but the ultimate purpose, the protection of the serviceman's property from loss while he is away, is the same. The Congress, in enacting section 560, intended that certain classes of real property should not be sold to enforce the collection of a tax except upon leave of the court as provided therein; and that all other classes of real property owned by the serviceman might be sold to enforce the collection of a tax, subject to the right of redemption, the time for which was and is extended by section 525. We are unable to hold with the appellant in his contention that Congress could not have intended that section 525 should apply to those classes of real property not within the protection of section 560 and which, therefore, could be sold for taxes. We think and so hold that the very purpose of section 525 was to give the serviceman an extended time within which to redeem the types and classes of real property not provided for by section 560.

Appellant contends that section 525 should apply only to those cases in which real property owned and occupied by the serviceman for dwelling, professional, business, or agricultural purposes was sold by leave of the court, for taxes. In that type of case the serviceman has no need of section 525; his rights and interests are amply provided for by subsection (3) of section 560, which reads:

"When by law such property may be sold or forfeited to enforce the collection of such tax or assessment, such person in military service shall have the right to redeem or commence an action to redeem such property at any time not later than six months after the termination of such service."

Thus, if appellant's contention were upheld, section 525 becomes of no effect. We should not assume this to have been the legislative intent, for, as stated in 50 Am. Jur., Statutes, Par. 362:

"It may be presumed to have been the intention of the legislature that all its enactments which are not repealed should be given effect. Accordingly, all statutes should be so construed, if possible, by a fair

and reasonable interpretation, as to give full force and effect to each and all of them. Under this rule, it may not be assumed that one or the other of related statutees is meaningless. Such statutes will be so construed as to give each a field of operation."

We hold that, according to the plain wording of the October 6, 1942 amendment to section 525, the Congress granted to all servicemen, including this respondent, an extended time within which to redeem any and all of his real property sold for taxes. The land here in dispute ■ was, under the laws of this state, deemed to have been sold to Millard County at a preliminary tax sale on January 10, 1939, to pay the taxes for the year 1938. U. C. A. 1943, Sec. 80-10-31. The owner of the property, respondent herein, then had as the time within which he could redeem the land from this preliminary sale,

"any time while the property is held by the county under preliminary tax sale prior to the 1st day of April next following the lapse of four years from the date of preliminary sale,"

or until March 31, 1943. Sec. 80-10-59, U. C. A. 1943. However, the respondent was inducted into the military service of the United States on March 4, 1943, just 27 days before his period of redemption would have expired. Under the operation of section 525 those 27 days from March 4, to March 31, 1943, should not have been included in computing the period of redemption to which the respondent was entitled under the state law. Section 525 of the Soldiers' and Sailors' Civil Relief Act, U. S. C. A., Title 50, War, Appendix, tolled the Utah period of redemption on March 4, 1943, and so the redemption period for this particular piece of land did not expire on March 31 as it normally would have done had the respondent not entered the military service when he did.

Section 80-10-68, U. C. A. 1943, providing for the sale of unredeemed real estate by the county, reads ■ in part:

"Upon receiving the tax-sale record from the county treasurer, the county auditor shall immediately advertise for sale during the month

of May all real estate sold to the county at preliminary sale and not previously redeemed * * * *and upon which the period of redemption expired upon March thirty-first next preceeding * * **." (Italics ours.)

The italicized portion of the above-quoted statute reflects that one of the requisites of a valid tax sale by the county is that the period of redemption has expired. In this case the period of redemption had not expired, it having been tolled on March 4, 1943, by operation of the Soldiers' and Sailors' Civil Relief Act. Hence, the May sale of respondent's property was not made in compliance with the laws of this state, and so was fatally defective. The appellants herein acquired no title as a result of the purported sale to them by the county on May 28, 1943.

We next consider the second question raised on this appeal. Did the trial court err in holding that the appellants, as occupying claimants, are not entitled to reimbursement for the value of the improvements which they placed upon the land? The rule as to occupying claimants is codified in Section 78-6-1 et seq., U. C. A. 1943, and, so far as pertinent to this case, may be stated in this manner: In order to recover for improvements made as an occupying claimant, the claimant (1) must have occupied under color of title; and (2) must have made the improvement in good faith. While Section 78-6-1 provides for a subsequent action to determine the value and ownership of improvements, the parties herein adopted the procedure of having such issue determined in this hearing. Since the parties consented to this procedure, we express no opinion as to the necessity of a subsequent hearing. See: *Peterson* v. *Weber County et al.*, 99 Utah 281, 292, 103 P. 2d 652; *Curley, et al.* v. *Mills et ux.*, 104 Utah 303, 139 P. 2d 882.

There is no question here but what the appellants occupied under color of title. However, the trial court found and so held that they lacked good faith in making the improvements. It is undisputed that the appellant J. George Jones, Jr., had notice of the existence and

nature of an adverse claim to the property, in the form of a letter from the respondent dated August 1, 1943, upon respondent's own letterhead caption "C. Nelson Day, Attorney At Law, Fillmore, Utah," advising Jones that the respondent had been and was still the owner of the land under the operation of the Soldiers' and Sailors' Civil Relief Act. Not receiving an answer to this letter, the respondent again wrote the appellant on March 20, 1944, stating

"I am at present and ever since the purchase from Mrs. Brock as above stated have been the owner of this land,"

again referring appellant Jones to the Soldiers' and Sailors' Civil Relief Act and its amendments. This second letter was returned by the appellant with the following typewritten and unsigned notation at the bottom:

"County officials informed me that sale was in good order."

The appellant, J. George Jones, Jr., commenced the improvements upon the land "early in 1945," nearly two years after receiving respondent's first letter advising him of the adverse claim, and approximately one year after receiving respondent's second letter. With regard to what investigation appellant made to determine the validity of this adverse claim before commencing the improvements, he testified that he sent word to the county attorney through another farmer and associate of his explaining the situation; and that a week or so later he received word back, third-hand, that he could go ahead, that respondent's letter stating he was in the military service should not deter the operations (the making of improvements).

The question thus presented is, did the appellant J. George Jones, Jr., at the time he made the improvements for which he is claiming reimbursement, act in good faith in making those improvements? He had ample notice that the respondent, a person in the military service, was making claim as owner, under the provisions of the Soldiers' and

Sailors' Civil Relief Act, and he also knew that respondent was the record owner prior to the sale of the land to the county for taxes. Either one of respondent's letters was sufficient notice to put a reasonably prudent person on inquiry as to the nature of his possession before making improvements. And such inquiry, if honestly followed in this case would have led to the fact that the appellant Jones did not have good title to the land.

The rule as to improvements made after notice is as stated in 27 Am. Jur., Improvements, Paragraph 15:

"* * * Good faith may under some circumstances, however, coexist with notice of a claim adverse to the occupant's title. Thus, one may be a possessor in good faith although aware of an adverse claim if he had reasonable and strong grounds to believe such claim to be destitute of any just or legal foundation, as where he is advised by reputable legal counsel that the claim is without legal merit, or if the adverse claim is asserted under such conditions as would warrant a reasonable man to disregard it. * * *"

The appellant Jones failed even to bring himself within the exception provided in this rule. Here was a man of experience about to make extensive improvements upon a piece of land he had bought at a tax sale for $31.07, having already received notice from the prior record owner, a lawyer, that in the latter's opinion the tax sale was invalid because of the operation of the Soldiers' and Sailors' Civil Relief Act. What precautions did he then take to determine the nature of his possession and title before making these improvements? He sent a request by word of mouth through other persons to the county attorney explaining the situation. Just what this explanation of the situation was, does not appear from the record. A week or so later appellant claims to have received word back from the county attorney, third-hand, that he could go ahead with the improvements and that plaintiff's letters advising him of the adverse claim should not deter his operations.

We believe that good faith required more of the appellant Jones than this. Before being able to contend that he had

"reasonable and strong grounds to believe such claim (of the respondent) to be destitute of any just or legal foundation,"

we believe appellant should have, before making the improvements, diligently and conscientiously examined his title in the light of the adverse claim and particularly with reference to the provisions of the Soldiers' and Sailors' Civil Relief Act which was specifically pointed out to him by the adverse claimant as the basis for the claim. Accordingly, we affirm the holding of the trial court, that the improvements were not made in good faith by appellants as is required by Section 78-6-1, and so appellants are not entitled to reimbursement therefor.

The judgment is affirmed. Costs to respondent.

McDONOUGH, C. J., and PRATT, WADE and WOLFE, JJ., concur.