HIDDEN MEADOWS DEVELOPMENT COMPANY, Plaintiff and Respondent,

v.

Dee MILLS, Milton C. Christensen, aka Milton A. Christensen, Paradise Valley Estates, Inc., Lake Mills Company, a Limited Partnership, Carole Lee Christensen, Environmental Resources, Inc., et al., Defendants and Appellants.

Nos. 15027, 15157, and 15188.

Supreme Court of Utah.

Jan. 2, 1979.

John G. Marshall, Salt Lake City, for Dee Mills, Evelyn I. Mills, and Evelyn Mills Trust.

Hanson & Garrett, Salt Lake City, for Intern. Environ. Sciences.

Leonard H. Russon and James L. Sadler, Salt Lake City, for Milton Christensen, Paradise Valley Estates, Lake Mills, Carole Christensen and Environmental Resources.

Cullen Y. Christensen, Provo, for plaintiff and respondent.

HALL, Justice:

This is an action in equity seeking specific performance of an option to purchase realty.

Defendants, Dee Mills and Evelyn I. Mills (hereinafter "Mills"), granted the option in question in favor of plaintiff's predecessor in interest. Subsequently, Mills granted a similar option to defendant, Milton C. Christensen (hereinafter "Christensen"). Mills refused to honor plaintiff's option which resulted in the filing of the initial complaint and the recording of a Lis Pendens in the office of the county recorder. Thereafter, Mills conveyed various interests in the land in question to defendants, Paradise Valley Estates, Inc., (hereinafter "Paradise") Lake Hills Company, a limited partnership, (hereinafter "Lake") Carole Lee Davis, Environmental Resources, Inc., and International Environmental Sciences, a limited partnership (hereinafter "International"). Those conveyances were apparently with the consent of Christensen as he was president of Paradise, the principal of Lake and became the husband of Carole Lee Davis (a partner in International).

The initial trial of the specific performance action resulted in a judgment of dismissal declaring the option void and an appeal was filed to this Court. Supersedeas bond was fixed in the sum of $50,000, however, none was ever furnished. This Court reversed and directed the granting of specific performance of the option.[1] On remand, the trial court on August 28, 1973 ordered Mills to transfer the property to plaintiff for the sum of $86,200. In the interim between the entry of the initial judgment and the order of August 28, 1973, Lake and Paradise conveyed the land in question to defendant, International, which proceeded to make certain improvements on the land and also made certain conveyances of various portions thereof. When plaintiff was unable to enforce the judgment against Mills due to the interim conveyances, it filed a supplemental complaint and joined as additional parties defendant those persons who had acquired any interest in the subject land subsequent to the entry of the initial judgment of the trial court.

After a trial on the issues raised by the supplemental complaint, the trial court specifically found that all defendants had actual knowledge of the appeal pending in this Court prior to their acquisition of any purported interest in the land and, since the Lis

Pendens remained unreleased, they had constructive notice of plaintiff's interest as well. The trial court further found that International had made improvements upon the land consisting of land leveling and clearing, installation of culverts, grading of roads, installation of ditches and remodeling and addition to a house situated thereon, all of which had a value of $35,000. The trial court also found that International had undertaken certain planning, platting and rezoning activities with respect to the use of the land, but declined to place any value thereon as an improvement. Accordingly, judgment of specific performance was entered in favor of plaintiff, subject to International's entitlement to compensation in the amount of $35,000 for improvement made as an occupying claimant.[2]

Mills, Christensen and International filed separate appeals which have been previously consolidated.[3] The basic issue raised by each appeal bears upon the propriety of the trial court's determination that the recordation of a Lis Pendens precludes the conveyance of a marketable title to lands that are the subject of a pending appeal. Both International and Mills raise additional issues which bear upon their respective positions as occupying claimants, the former contending it is entitled to a further award for expenditures attributable to its efforts to rezone the land, and the latter contending that the trial court erred in refusing to receive proffered evidence of improvements they made to the land.

Plaintiff cross-appeals, challenging the award to International as an occupying claimant on the ground that the improvements were not made in good faith.

■ First addressing the Lis Pendens issue, we note that appellants simply urge that Lis Pendens has no effect or duration after judgment and pending appeal. A review of the basic doctrine of Lis Pendens, our statutory enactment pertaining thereto, and the prior pronouncements of this Court, fail to sustain their contentions.

■ Literally, the term "lis pendens" signifies pending litigation and the so-called "doctrine of lis pendens" confirms the power of the courts over property during the pendency of legal proceedings. It charges the public with notice of outstanding claims and causes one who deals with property involved in pending litigation to do so at his peril.[4]

U.C.A., 1953, 78–40–2 provides as follows:

78–40–2. Lis pendens.—In any action effecting the title to, or the right of possession of, real property the plaintiff *at the time of filing the complaint or thereafter*, and the defendant *at the time of filing his answer* when affirmative relief is claimed in such answer, *or at any time afterward*, may file for record with the recorder of the county in which the property or some part thereof is situated a notice of the pendency of the action, containing the names of the parties, the object of the action or defense, and a description of the property in that county affected thereby. From the time of filing such notice for record only shall a purchaser encumbrancer of the property affected thereby be deemed to have constructive notice of the pendency of the action, and only of its pendency against parties designated by their real names. [Emphasis added.]

The fact that the foregoing statutory provision allows the recordation of a Lis Pendens *at any time* clearly preserves its integrity *after* judgment and pending appeal.

Consistent with said statutory provision, this Court long ago recognized the on-going potency and effectiveness of a recorded lis pendens after judgment. In *Larsen v. Gas-*

---

2. Pursuant to U.C.A., 1953, 57–6–1, et seq.

3. Various other named defendants' interests were previously compromised and settled so as to obviate their appeal. Also, the appeal of Paradise, Lake, Carole Lee Christensen (for-

merly Carole Lee Davis), and Environmental Resources will hereafter be referred to that of "Christensen" for the purposes of convenience since the issues raised are identical.

4. See 51 Am.Jur.2d Lis Pendens, Sec. 1.

*berg*[5] it was held that where real property was levied upon under an execution as the property of the judgment debtor, the filing of a lis pendens notice of a suit by the grantor of the judgment debtor *one day* before the execution sale imparted notice to the purchaser at such execution sale of all plaintiff's right, title and interest. Consequently, the deed executed under such circumstances was held to be null and void and was cancelled for want of a bona fide or innocent purchaser.

The sole purpose of recording a lis pendens is to give constructive notice of the pendency of proceedings which may be derogatory to an owner's title or right to possession.[6] One who takes with full knowledge that the property taken is the subject of on-going litigation acquires only the grantor's interest therein, subject to whatever disposition the court might make of it.[7]

The rule is well settled that, where a judgment is reversed and remanded with specific instruction or directions, the case stands in the lower court precisely as it did before a trial was had in the first instance.[8] Hence, that very situation existed in the instant case as a result of our reversal and remand with directions to grant specific performance.[9] Also, by so reversing, the Court has already recognized the full effectiveness of lis pendens pending appeal.

Appellants further contend that since plaintiff failed to furnish a supersedeas bond it was not entitled to a stay of proceedings and that such failure in some way rendered the notice given by the recorded lis pendens ineffectual. For two very obvious reasons, that contention is without merit. First, and foremost, the "failure" to accomplish any number of imaginable things in no way alters the inescapable fact that a duly recorded lis pendens serves as notice to all persons. It is an elementary principle of real estate law that those who deal in property interests are bound by those matters that appear of record and one may not be penalized or deprived of the effectiveness of such notice as is imparted by the record simply because of some unrelated action or inaction of his or others. Secondly, plaintiff was not bound to furnish supersedeas. Such was merely *available* to him.[10] The fact that none was furnished is of no consequence in this case. This is found to be so when it is observed that the purpose and effect of supersedeas is to restrain the successful party and the lower court from taking affirmative action to enforce a judgment or decree.[11] The judgment involved here was one of dismissal and, as such, was self-executing. Hence, it was not the subject of any enforcement and the failure to perfect supersedeas could in no way affect it.[12]

In light of the foregoing analysis, it cannot be said that a lis pendens does not endure after judgment and pending appeal, and we so hold. Consequently, the trial court correctly determined that all appellants were thereby charged with constructive notice of plaintiff's claims prior to their acquisition of any interests in the land in question.

The propriety of the trial court's conclusion that appellants had *actual* notice of plaintiff's appeal is also borne out by the record which reflects the fact that at all times material to these proceedings, Christensen was intertwined with all of the appellants and was the apparent alter ego of certain of them. He was president of Para-

---

5. 43 Utah 203, 134 P. 885 (1913).

6. *Hansen v. Kohler*, Utah, 550 P.2d 186 (1976).

7. *Glynn v. Dubin*, 13 Utah 2d 163, 369 P.2d 930 (1962).

8. *Larsen v. Gasberg*, supra, footnote 5.

9. *Hidden Meadows Development Company v. Mills*, supra, footnote 1.

10. Rule 73(d), Utah Rules of Civil Procedure.

11. 4 Am.Jur.2d Appeal and Error, Section 371.

12. *Gumberts v. East Oak Street Hotel Co.*, 404 Ill. 386, 88 N.E.2d 883 (1949); *Western United Dairy Co. v. Miller*, 40 Ill.App.2d 403, 189 N.E.2d 786 (1963).

dise and Environmental Resources, Inc. which was the general partner of Environmental, a limited partnership, and he married Carole Lee Davis on February 16, 1973. Those facts are sufficient to support the trial court's conclusion that the appellants had actual knowledge of plaintiff's appeal and hence were charged with knowledge of the fact that the first judgment was subject to being reversed.[13]

■ Turning now to the issue presented by the appeal of Mills which bears upon their entitlement to the value of improvements made as occupying claimants after the date of plaintiff's option to purchase, it appears that their contentions are without substance. This is so by reason of the fact that these matters were before the trial court in the proceeding conducted following our earlier remand. In that proceeding, plaintiff and Mills were both parties, the same property was involved, and the amount to be paid by plaintiff to Mills to acquire the property was determined. No appeal was taken from the order of Specific Performance of August 28, 1973. Such prior determination is res judicata as to the amount payable by the plaintiff under the option to Mills, who cannot now attempt to alter that former decision.[14]

The final issue requiring our attention involves the appeal of International which seeks to enhance its award for improvements as occupying claimant and the cross-appeal of plaintiff which asserts the trial court erred in making any award at all for improvements.

The Legislature has seen fit to temper the rigid rules of the common law by enacting an "Occupying Claimants" statute[15] which provides in pertinent part as follows:

57–6–1. Where an occupant of real estate has color of title thereto, *and in* *good faith* has made valuable improvements thereon, and is afterwards in a proper action found not to be the owner, no execution shall issue to put the plaintiff in possession of the same after the filing of a complaint as hereinafter provided, until the provisions of this chapter have been complied with. [Emphasis added.]

57–6–2. Such complaint must set forth the grounds on which the defendant seeks relief, stating as accurately as practicable the value of the real estate, exclusive of the improvements thereon made by the claimant or his grantors, and the value of such improvements. The issues joined thereon must be tried as in law actions, and the value of the real estate and of such improvements must be separately ascertained on the trial.

■ The foregoing sections ameliorate the strict common law rule that the owner is entitled to the improvements placed by another upon his property, and is based upon the equitable doctrine of unjust enrichment.[16]

■ An occupying claimant is required by our statute to establish two elements before he can recover for improvements placed on real property by him: (1) that he has color of title; and (2) that he placed the improvements in good faith. If he fails to establish either one, he cannot recover.[17]

A number of jurisdictions, including Utah, have announced the broad proposition that no recovery can be had for improvements made with the knowledge of the existence of an adverse claim which subsequently proves to be superior to that of the occupant.[18] The cases of *Reimann v.*

---

13. *McClung v. Hohl*, 10 Kan.App. 93, 61 P. 507 (1900); *Patterson v. Old Dominion Trust Co.*, 149 Va. 597, 140 S.E. 810 (1927); *Glynn v. Dubin*, supra, footnote 7.

14. *Matthews v. Matthews*, 102 Utah 428, 132 P.2d 111 (1942).

15. U.C.A., 1953, 57–6–1, et seq.

16. *Reimann v. Baum*, 115 Utah 147, 203 P.2d 387 (1949).

17. *Doyle v. West Temple Terrace Co.*, 47 Utah 238, 152 P. 1180 (1915); *Day v. Jones*, 112 Utah 286, 187 P.2d 181 (1947).

18. See 41 Am.Jur.2d, Improvements, Section 17 for citations.

*Baum*[19] and *Erickson v. Stokes*[20] both stand for the proposition that one who places improvements after notice of an adverse claim is precluded from recovering the value thereof.

The facts in *Erickson v. Stokes* are strikingly similar to those in the case before us. There, Erickson, a purchaser at tax sale, sued to quiet title and obtained a judgment. Thereafter, Stokes sought to intervene and moved to set aside the decree and re-open the case, setting forth by affidavit that she had a substantial interest in the property and a good defense to the action. Her application for intervention was denied and she then sued Erickson to quiet title, recording a lis pendens. She was ultimately successful in her suit, having shown the tax sale was defective. After the filing of her quiet title action and during its pendency, Erickson proceeded to construct improvements. The court in denying Erickson's claim for the value of the improvements observed that he had notice of the adverse claim prior to the placement of the improvements and in the absence of a showing of good faith, (which burden was upon him) he could not recover.

■ The rules of appellate review generally preclude this Court from substituting its judgment for that of the trial court on factual issues. However, the trial court is bound to make factual determinations to support its legal conclusions and said findings must be supported by substantial evidence.

■ A review of the record in this matter reveals that International made no showing that it acted in good faith in making the improvements and the court's findings of fact are entirely silent in that regard, leaving nothing to support its conclusion of law that International was entitled to an award of $35,000.

It is also to be noted that the conclusion of the trial court that International had *actual* and *constructive* notice of plaintiff's claims is wholly inconsistent with the concept of good faith on the part of International.

■ As was noted supra, the doctrine of lis pendens imposes upon one who deals in property, which is the subject of pending litigation, the burden of doing so at his peril. Consequently, one who relies upon the rights afforded by statute as an occupying claimant is charged with the burden of demonstrating his good faith in placing improvements in the face of an adverse claim.

■ International's sole explanation of good faith was that it relied on the accuracy of the ruling in the first trial under the facts of this case. Such is not sufficient to justify a determination of good faith.

The judgment is affirmed except that portion thereof which awards $35,000 to International as an occupying claimant is vacated. Plaintiff is entitled to costs.

ELLETT, C. J., and MAUGHAN and WILKINS, JJ., concur.

CROCKETT, Justice: (Concurring, but dissenting in part).

I agree with all that is said in the main opinion, except that I dissent from those portions dealing with the reversal of the award of $35,000 to the defendant as an occupying claimant. That reversal appears to be based upon the statement that "no recovery can be had for improvements made with the knowledge of the existence of an adverse claim which subsequently proves to be superior to that of the occupant." That statement is too broad. If literally applied, it would in many instances defeat the purpose of the occupying claimant statute. It is submitted that an examination of the cases cited in support thereof[1] will reveal that the rule as stated is all right as applicable to the particular facts therein, but is not necessarily inconsistent with what is said in this dissent.

It requires little reflection to realize that if a claimant must have title which ulti-

---

**19.** Supra, footnote 16.

**20.** 120 Utah 653, 237 P.2d 1012 (1951).

**1.** See footnote 18 main opinion.

mately proves to be superior, he would have no need to recover for improvements placed on the land. It is only when he has a bona fide claim, constituting color of title, and in good faith places improvements on the land, and his claim of title later proves to be inferior to some other claim, that he needs that protection.

Consistent with the foregoing is the language of the statutes themselves. Secs. 57–6–1 and 2 indicate that the occupant can recover if "in good faith" he makes valuable improvements on the property and is afterwards *"found not to be the owner."* It is obvious that this contemplates a situation where there is an outstanding "adverse claim which subsequently proves to be superior to that of the occupant."

The main opinion correctly states that the doctrine is based on unjust enrichment of the person who proves to be the true owner. This enrichment entails something which is a benefit to the land and thus to the true owner.

Whether recovery may be had may well depend upon several circumstances, including the nature of the improvement placed on the property. Conceivably it could be a dam, or a bridge or some other improvement essential to preserve the land itself, as contrasted with something which would improve it only for the purpose and use of the occupying claimant. In this case the view of the trial court was that the leveling and clearing of the land, installation of ditches and culverts, grading of roads and remodeling of the house were such improvements of the land itself as to constitute an unjust enrichment to the plaintiff.

The critical questions for determination in this case: whether the defendant as an occupying claimant placed the improvements thereon in good faith, and whether they unjustly enriched the plaintiff by improving his land, are necessarily questions of fact the determination of which should be left to the trial court. This is affirmed by Sec. 57–6–2 which states that "the issues joined thereon must be tried as in law actions . . . ."

Inasmuch as those critical issues have been tried and determined by the trial court, and there is a reasonable basis in the evidence to support his finding and judgment, it is my opinion that under the standard rule of review they should not be overturned.

I would affirm the judgment in its entirety.