SALEM CITY, Plaintiff and Appellant,

v.

Bruce FARNSWORTH, Defendant and Respondent.

No. 870347–CA.

Court of Appeals of Utah.

April 27, 1988.

Richard M. Taylor, Taylor and Taylor, Spanish Fork, for plaintiff and appellant.

Glen J. Ellis, Ellis & Ellis, Provo, for defendant and respondent.

Before GREENWOOD, JACKSON and DAVIDSON, JJ.

## MEMORANDUM DECISION

JACKSON, Judge:

Salem City appeals from a circuit court judgment dismissing misdemeanor charges against Bruce Farnsworth for violation of a municipal zoning ordinance. We affirm.

Farnsworth was charged with "Improper Location of a Mobile Home" in contravention of Salem City Ordinance 3–17, which states:

Trailer Houses and Mobile Homes. No occupied trailer house or mobile home shall be permitted in Salem City, Utah, except under the following conditions:

1. When the trailer house or mobile home is located in a licensed trailer court or mobile home park.

2. When the trailer house or mobile home is located on a lot on which a building is being constructed, provided a permit to construct a building on such lot has been obtained from the zoning ad-ministrator, but in no event shall the trailer or mobile home be occupied in excess of one year without consent of the Salem City Council.

The word "occupied" is not defined in the Salem City ordinances. At a pretrial conference, the parties agreed that the only issue was the interpretation of the phrase "occupied trailer house or mobile home." They submitted memoranda and stipulated to the following facts. Farnsworth located his trailer house near his house and on his property within Salem City limits, not in a licensed trailer court or mobile home park. At the time he was charged with the ordinance violation, no one resided in the trailer house; instead, it was being used for storage. In granting respondent's motion to dismiss, the trial court ruled that the ordinance, applicable to "occupied" trailer houses, only regulated the location of trailer houses inhabited by humans.

On appeal, Salem City argues that the trial court erroneously interpreted the word "occupied" too narrowly. Appellant asserts that the plain and ordinary meaning of that word in Ordinance 3–17 encompasses *any* use or possession, whether for human residence or storage or other purpose. We do not agree.

Undefined words in a zoning ordinance must be given their plain and ordinary meaning. *Wiggers v. County of Skagit,* 23 Wash.App. 207, 596 P.2d 1345 (1979). *Accord In re Adoption of M.L.T.,* 746 P.2d 1179, 1180 (Utah App.1987); N. Singer, *Sutherland Stat. Constr.* § 75.07, at 715 (4th ed. 1986). However, "where there is doubt or uncertainty as to the meaning of terms, they should be analyzed in the light of the total context of the ordinance ... and also in relation to the purpose, and the background circumstances, in which they are used." *Crist v. Bishop,* 520 P.2d 196, 198 (Utah 1974).

The dictionary lists the following nonarchaic, common meanings of the word "occupy":

1. to engage the attention or energies of;

2a. to fill up (a place or extent);

  b. to take up (a specified time);

3a. to take possession of by conquest;

b. to take up residence in;

c. to maintain possession or control of by military occupation;

4a. to hold possession of;

b. to fill and perform the functions of;

5. to reside in as an owner or tenant.

*Webster's Third New Int'l Dictionary* 1561 (1986). As the trial court recognized in the case before us, the word "occupied" has several possible plain meanings broader than "inhabited by humans," including at least one broad enough to cover mere possession for any use. Indeed, in the case relied on almost exclusively by appellant, the Utah Supreme Court found that occupancy *of real property* does not necessarily include residence, relying on dictionary definitions of "occupancy" as the "act of taking or holding possession" and "when a person exercises physical control over land." *Twiggs v. Board of Land Comm'rs,* 27 Utah 241, 75 P. 729, 731 (1904).[1] *Accord West End Brewing Co. v. Osborne,* 227 A.D. 340, 238 N.Y.S. 345, 347 (1929) (occupancy of land, within statute requiring notice to redeem when land sold for taxes is occupied, does not require residency).

In choosing from among several possible plain meanings of the word "occupied" in the Salem City ordinance, we must consider its context. Here, we are concerned with the meaning of the adjective "occupied" as it modifies "trailer house" and "mobile home," not land. The term "trailer house" itself is not defined in the ordinance. "Mobile home," however, is defined in Salem City Ordinance 2–8 as "a dwelling unit ... designed to be transported ... and which is ready for *occupancy as an independent dwelling unit.*" (Emphasis added).

The ordinance is clearly intended to prohibit persons in the city limits from living in trailer houses or mobile homes that are outside areas licensed specifically for them, except temporarily during construction of a house or other building on the same lot. If, as appellant argues, the drafters had intended to restrict the location of trailer houses and mobile homes used for any purpose (or for no purpose at all), there would be no need for the adjective "occupied" in the first sentence of Ordinance 3–17. Although it is true that a trailer house, designed and built as a dwelling unit, does not lose its general character as a trailer house when it becomes unoccupied,[2] we conclude that, under this zoning ordinance, a trailer house is not "occupied" unless it is inhabited. *See Terwilliger v. Union Fire, Accident & Gen. Ins. Co.,* 185 So. 43 (La.App.1938) (under fire insurance policy, a dwelling is not in a state of "occupancy" unless human beings are using it for their customary place of abode); *Florea v. Iowa State Ins. Co.,* 225 Mo.App. 49, 32 S.W.2d 111 (1930) (term "occupancy" within fire insurance policy on house refers to human habitation). *See also Baggerly v. Lee,* 37 Ind.App. 139, 73 N.E. 921, 923 (1905) ("The word 'occupation,' as applied to a dwelling house, means living in it. . . .").

The judgment of the trial court is affirmed.

GREENWOOD and DAVIDSON, JJ., concur.

---

**1.** The statute interpreted by the *Twiggs* court applied disjunctively "when settlers have *resided upon,* occupied or cultivated any lands...." *Twiggs,* 75 P. at 730 (emphasis added). If "occupied" necessarily included "resided upon," there would have been no reason for the enumeration of both terms in the statute. Similarly, in *Day v. Jones,* 112 Utah 286, 187 P.2d 181, 183 (1947), the court interpreted a federal statute that tacked on time to state redemption periods in order to benefit active duty servicemen whose real property was sold for nonpayment of back property taxes. By its terms, the statute applied only to land "owned and occupied" for either "dwelling, professional, business, or agricultural purposes by a person in military service...." *Id.* The court concluded that the respondent did not occupy the land because he did not live on it, or farm it, or graze it, or lease it to others for these purposes.

**2.** *Cf. Asay v. Watkins,* 751 P.2d 1135 (Utah 1988) (term "motor vehicle," within statute imputing liability to parent for negligent or willful misconduct of child "when driving a motor vehicle upon a highway," includes engineless auto, notwithstanding statutory definition of "motor vehicle" as "self-propelled").